**UNITED STATES v. BARNETT et al.**

No. 4275.

District Court, E. D. Kentucky, Richmond.

March 3, 1938.

John T. Metcalf, U. S. Atty., of Winchester, Ky., and Claude P. Stephens, Asst. U. S. Atty., of Prestonburg, Ky., for plaintiff.

Chester A. Bach and O. J. Cockrell, both of Jackson, Ky., for defendants.

FORD, District Judge.

Estill Barnett was arrested upon an indictment charging robbery of the mails. He was released from custody upon the execution of a bail bond in the penal sum of $15,000. The bond was signed by the respondents in this proceeding, as his sureties, and the condition of it was that Estill Barnett would appear at the time and place fixed for his trial to answer the indictment and render himself amenable to the orders and processes of the court in the prosecution thereof. His trial was set for the 25th day of April, 1935, at Richmond.

■ The case was called for trial immediately upon the convening of court at 9 a. m. on April 25th. The defendant failed to appear. An order was duly entered forfeiting the bail bond, and a scire facias was issued and served upon the respondents calling upon them to appear and show cause why judgment should not be rendered against them for the penalty of the bond. In response to the scire facias, the sureties have filed an answer which makes no denial of default on the part of their principal, Estill Barnett, but seeks remission of the penalty under the provisions of Revised Statutes, § 1020, 18 U.S.C.A. § 601. Under this statute, jurisdiction to grant remission of forfeiture of a bail bond is conditioned upon certain prerequisites, the first of which is the showing of no willful default on the part of the principal in the bond. The burden rests upon the sureties to show fulfillment of this condition precedent. It is clearly a jurisdiction prerequisite and "the law leaves no room for other considerations, however forceful." United States v. Costello, 6 Cir., 47 F.2d 684, 685.

It appears from the evidence that the defendant Estill Barnett employed counsel, procured and summoned many witnesses, and made elaborate preparation for the presentation of his defense to the charge against him. On the morning of April 25th, he left home in an automobile accompanied by his wife and arrived at the courthouse in Richmond a few minutes before the convening of court. His wife entered the courtroom, and Barnett remained outside interviewing witnesses and engaging in such activities as are usual in such cases. Until immediately before the calling of his case, his every action indicated that he fully expected to appear and submit to trial. About the time court convened or immediately before, he entered the elevator in company with certain of his witnesses apparently on his way to the courtroom. When the elevator reached the third floor, upon which the courtroom was located, there was a considerable crowd in the hallway outside the courtroom door endeavoring to gain entrance. When Barnett stepped from the elevator and was within a short distance of the courtroom door, an unidentified person stopped him and said

something to him. The witnesses present did not hear what was said. Barnett never entered the courtroom. Shortly thereafter, one of the witnesses in the case, John M. Combs, while on his way to the courtroom, saw Barnett unaccompanied going down the stairway from the third to the second floor.

Mrs. Harriet Major, one of the clerks in the District Attorney's office, left the courtroom a few minutes after court convened on her way to the District Attorney's office located on the second floor. She said: "When I left the third floor I walked down the steps to the second floor; as you know, there is a corner there. I turned that corner and met Estill Barnett face to face. I knew him from having seen him at the different courts, but he only looked at me and I looked at him, he didn't speak. He looked so worried or mad, he looked unusual. * * * He was alone, and there was no one close to us. He was going toward the steps. * * * He was in the corridor on the second floor. * * * He was going in the direction of the steps."

No person has been found or produced as a witness who saw Barnett alive after he passed Mrs. Major on his way down the stairway from the second floor of the building.

About 4 o'clock the next morning, April 26th, the dead body of Estill Barnett was found at the side of the public highway on the Boonesboro road about 12 miles from Richmond. There was a large caliber bullet hole in his left breast. Leslie Turpin, the officer who found him, stated that the body was a little warm and he estimated that he had been dead about an hour or an hour and a half. It was reported that persons living in the neighborhood heard a shot early on the same morning and the rapid departure of an automobile from the spot where the body was found. Upon the body were found two pieces of paper, identified as being in the handwriting of Estill Barnett. Upon one paper were these words:

"If never see you again I hope you find this note. When I entered the court building I was told by John Vermillion that my case was continued until next Court June term at Lexington and H. McGuire Judge wanted to see me at once In back of of building on street waiting for me In car. When I went out to car. To car one man said Henry was at Hotel. I got In when we got to the Place, was 3 more got In

car and we left. I dident know where we went. I was blindfolded.

"Dady,
"E.B.
"Would turn me loose for 5,000."

The other was as follows:

"Honey I dropped several notes to you as we were going had to be careful.
"daddy
"Estill
"God bless you and my 3 little boys
"I will meet in heaven."

■ These notes afford the only explanation for the mysterious disappearance of Barnett. While it is true that, under the established law, appearance, when prevented by death, exonerates from liability on the bond (United States v. Costello, supra; Taylor v. Taintor, 16 Wall. 366, 369, 21 L.Ed. 287), it is obvious from the facts disclosed in this case that death did not take place until the day following the appearance date, and hence his failure to appear cannot be attributed to that cause. The evidence is convincing that, in response to a message which reached him at the courtroom door, Barnett left the building just at the time his presence was required under the conditions of his bond. While it may be true that he was induced to leave by a false or deceptive message delivered to him by some unidentified person, and thereby caused to default on his bond, nevertheless in responding to the message by departing rather than proceeding to the courtroom, he exercised his freedom of will to such an extent as to preclude the claim that his conduct in that respect was not willful.

In the case of Taylor v. Taintor, 16 Wall. 366, 370, 21 L.Ed. 287, the Supreme Court said: "It is equally well settled that if the impossibility be created by the obligor or a stranger, the rights of the obligee will be in nowise affected."

■ By the terms of the bond, principal and sureties covenanted that in the event of default, the penalty of the bond should become payable according to its terms. Remission of the obligation, so created, is entirely a matter of grace and not of right. Jurisdiction of the courts of the United States to grant such remission can be exercised only when the conditions prescribed by the statute have been fulfilled. United States v. Mack, 295 U.S. 480, 55 S.Ct. 813, 79 L.Ed. 1559.

It seems to be well settled that, if the principal in the bond fails to appear in accordance with its requirements, lack of willfulness is not disclosed merely by showing that his absence was due to erroneous advice or deception. United States v. Fabata, D. C., 253 F. 586.

Liability against the sureties on the bond must be determined by conditions obtaining at the time of the default and forfeiture. Disabilities subsequently ensuing have no bearing upon the point. Detroit Fidelity & Surety Co. v. United States, 8 Cir., 59 F.2d 565. Even where the principal is prevented from appearing by imprisonment in another jurisdiction, that fact affords his sureties no basis for the claim that his absence is not willful. Weber v. United States, 8 Cir., 32 F.2d 110.

Under the facts of this case, the decision turns not upon the court's discretion, but upon the fact that no discretion exists. There is a lack of power. However great may be the hardship upon the sureties, the court is without jurisdiction to afford them relief from the obligation which they voluntarily assumed.

The prayer for remission of the forfeiture must be denied. Let judgment be entered upon the scire facias. Counsel will prepare findings of fact, conclusions of law and judgment, in conformity herewith.