IN RE APPLICATION OF RUBIN SHETSKY FOR RETURN OF BAIL MONEY.
COUNTY OF HENNEPIN AND OTHERS, RESPONDENTS.[1]

June 19, 1953.

No. 35,737.

[1]Reported in 60 N. W. (2d) 40.

464

*Kleve J. Flakne* and *John Ott,* for appellant.

*Michael J. Dillon,* County Attorney, and *Per M. Larson,* Assistant County Attorney, for County of Hennepin and State of Minnesota.

MATSON, JUSTICE.

Petitioner appeals from an order denying his petition and motion to vacate an order forfeiting bail money.

We are basically concerned with the following question: Where the defendant in a criminal action, who is free on bail, wilfully flees from the jurisdiction in the course of his trial and does not return until almost 18 months later when he is apprehended and brought back by agents of the Federal Bureau of Investigation and where the surety upon his bail bond at the time of his flight elected to purge itself of all further liability under the bond *by doing nothing more than paying the penalty sum of the bond into court pursuant to M. S. A. 629.58,* is it an abuse of discretion for the trial court to deny the petition of the surety—or of the defendant as the assignee of the surety's rights—for the setting aside of the court's order of bail forfeiture and for a partial refund of the bail money, *when the defendant is acquitted in a subsequent trial?*

Petitioner, Rubin Shetsky, was indicted by the grand jury of Hennepin county for the crime of second degree murder for the shooting of Albert Schneider. He was arrested and arraigned, and he pleaded not guilty. On August 6, 1945, Shetsky, as principal, and Western Surety Company, as surety, executed a bail bond in the penal sum of $20,000 to secure Sketsky's appearance for the trial. The trial upon the indictment began on September 10, 1945, with Shetsky in attendance; but before the state's case against him had been completed, Shetsky voluntarily fled the jurisdiction. On September 24, 1945, the district court entered an order adjudging the bail forfeited. On October 10, 1945, the Western Surety Company (hereinafter called the surety company), pursuant to § 629.58, petitioned and moved the district court for an order authorizing and directing it to pay into the court the amount forfeited under the bail bond and to be forever discharged of its obligation. Notice of this motion and an order to show cause why such motion should not be granted was served upon the attorneys for Shetsky who, however, did not appear to contest the motion. On October 11, 1945, the district court issued an order authorizing and directing the surety company to pay the $20,000 to the clerk of the district court. The surety company complied with the order on the date of its issuance, and the clerk of the district court paid the money to the treasurer of Hennepin county on October 31, 1945.

The trial continued in Shetsky's absence, and the jury returned a verdict of guilty. The defendant was sentenced *in absentia* to life imprisonment.

Shetsky remained a fugitive from justice until March 1947 when he was apprehended in California by agents of the Federal Bureau of Investigation, and subsequently he was delivered to the state prison at Stillwater, Minnesota. During the period that he was a fugitive from justice, Shetsky kept himself concealed in various cities of the United States and Mexico; used false or assumed names; and made no attempt to communicate with his attorney, the district court of Hennepin county, or law enforcement officials. After being returned to this state, he remained incarcerated in the state prison at Stillwater until 1949 when this court determined in a habeas corpus proceeding that sentencing him *in absentia* denied him the protection of due process of law; accordingly, it was ordered that he be returned to Hennepin county for resentencing. State ex rel. Shetsky v. Utecht, 228 Minn. 44, 36 N. W. (2d) 126, 6 A. L. R. (2d) 988.

After being resentenced to imprisonment for life, he moved for a new trial which motion the trial court denied but this court granted. State v. Shetsky, 229 Minn. 566, 40 N. W. (2d) 337. After getting the venue of the trial changed to McLeod county, he was tried and found not guilty on May 25, 1950.

On November 29, 1950, the surety company "For value received" assigned to Shetsky all its rights to the bail money which it, pursuant to the district court's order, had paid in to the clerk of court of Hennepin county on October 11, 1945. Shortly thereafter, Shetsky petitioned the district court of Hennepin county under § 629.59 to vacate the order of September 24, 1945, forfeiting the bail money and to remit the bail money less expenses and disbursements incurred by the county in apprehending and returning him to Minnesota. The district court denied Shetsky's petition. On appeal to this court we held that the district court did not have jurisdiction to rule on the merits and should have dismissed the petition since the petition had not been served upon the party (the county) having

possession of the bail money. In re Application of Shetsky for Return of Bail Money, 234 Minn. 416, 48 N. W. (2d) 518.

On August 25, 1951, Shetsky again filed a petition for vacation of the order forfeiting the bail money and for remission of the bail money. For purposes of this proceeding, petitioner admitted that his flight from this state was voluntary but urged that certain mitigating circumstances existed which entitled him to return of the bail money. In their essence these circumstances were that he left his state because threats upon his life were communicated to him during the time he was in attendance at his trial and because he was not getting a fair trial in that certain witnesses gave false testimony against him. The county of Hennepin opposed the granting of Shetsky's petition on the grounds (1) that the assignment from surety company transferred nothing to Shetsky since the surety company had no right to a return of the bail money in that (a) it voluntarily paid in the money under § 629.58 and therefore could not avail itself of the remission provision of § 629.59 and (b) because it had done nothing to justify a return to it of the bail money and (2) that Shetsky's allegations that he fled (a) because his life was threatened and (b) because he was not getting a fair trial were not true.

A hearing followed, and on October 25, 1951, the district court found that petitioner's flight from the state was wilful and made with intent to defeat the administration of justice; that he had established no valid justification for his absence; that he returned only because he was forcibly apprehended; and that the surety had made no effort whatsoever to find, apprehend, or return Shetsky during his absence. The court concluded that Shetsky was not entitled to a return of the bail money in whole or in part and, accordingly, denied his petition and motion. From that order this appeal is taken.

Ancillary to the basic issue of whether, in the exercise of a sound judicial discretion, an accused, who is ultimately acquitted in his subsequent trial but who has obstructed the administration of justice by wilfully fleeing from the jurisdiction in the course of

his first trial and not returning until he is forcibly apprehended many months later, is entitled to a remission of bail forfeited and paid under § 629.58, we have the following subsidiary issues:

(1) In the absence of an action brought under § 629.59, does the trial court have inherent discretionary power to remit in whole or in part bail money paid by the surety under § 629.58 in discharge of its liability?

(2) After a final order is made for the payment of bail money and after the payment of the same into the public treasury, does the trial court have jurisdiction to remit or mitigate the forfeiture?

(3) Is the ultimate guilt or innocence of the defendant material in determining whether a remission or mitigation of a bail forfeiture is justified?

(4) Does the evidence sustain a finding that petitioner's flight was wilful in the sense that his act of fleeing was not justifiably induced by fear of threats upon his life or by conditions which deprived him of a fair trial?

Respondents contend that a trial court is without jurisdiction to grant a remission of bail money paid under § 629.58 in the absence of an action for bail forfeiture pursuant to § 629.59. In other words, respondents assume that the court's power to remit a bail penalty, in whole or in part, is limited by § 629.59 to those cases where the state has brought an action to declare the penalty of a recognizance forfeited. They are in error. In the first place, it is clear that the term *recognizance* is applicable to surety bonds. A *recognizance* and a *surety bond,* as well as any other bond or undertaking given to secure a defendant's appearance in a criminal action, as a practical matter, differ from each other merely as to form. The terms *recognizance* and *surety bond* are used interchangeably in our statutes without regard to the technical distinction between them.[2] Secondly, bail statutes are remedial and

---

[2]In re Brown, 35 Minn. 307, 29 N. W. 131. Compare §§ 629.58 and 629.59 with §§ 629.67, 629.69, and 629.70. For technical difference, see State v. McGuire, 42 Minn. 27, 43 N. W. 687; 8 C. J. S., Bail, § 2; 6 Am. Jur., Bail and Recognizance, § 3.

should be given a liberal construction to accomplish their purpose.[3] The remedial purpose of § 629.58—which in part was to encourage sureties upon default to pay the penalty of their undertaking without putting the state to the expense of litigation—would largely be defeated if a surety making a voluntary payment thereunder were to be penalized by a construction which denied him all right of remission for justifiable cause.[4] Lastly, the power vested in the trial court in connection with the right of action given under § 629.59 is cumulative rather than exclusive of the inherent powers of courts at common law to grant relief from bail forfeiture.[5] There is a presumption that a statute is consistent with the common law, and therefore a statute creating a new remedy or method of enforcing a right which existed before is regarded as cumulative rather than exclusive of the previous remedies.[6] An existing common-law remedy is not to be taken away by a statute except by express wording or necessary implication. Donnelly v. Minneapolis Mfg. Co. 161 Minn. 240, 201 N. W. 305; 6 Dunnell, Dig. & Supp. § 8958.

■ As before noted, the first trial began on September 10, 1945. On September 24 the trial court ordered a forfeiture of bail. The surety's application to pay the bond penalty in complete discharge of its obligation was granted October 11, 1945. Payment of the bail money to the clerk of the court was made forthwith, and on October 31, 1945, the clerk paid the money to the treasurer of Hennepin county. Has the trial court, after the making of an order

[3]Flanigan v. City of Minneapolis, 36 Minn. 406, 31 N. W. 359; State v. Bongard, 89 Minn. 426, 94 N. W. 1093; United States v. Jenkins (4 Cir.) 176 F. 672, 20 Ann. Cas. 1255.

[4]Examples of justifiable causes are: Serious illness of the defendant, accident, or detention in the custody of another jurisdiction, whereby the defendant is prevented from appearing for trial as required by the terms of his bond. See, Annotation, 84 A. L. R. 440 to 445.

[5]6 Am. Jur., Bail and Recognizance, § 119. See, United States v. Jenkins, *supra.*

[6]3 Sutherland, Statutory Construction (3 ed.) § 5305, p. 16; Bellant v. Brown, 78 Mich. 294, 44 N. W. 326.

for the payment of bail money and after the payment thereof into the public treasury, jurisdiction to remit or mitigate a bail forfeiture? In the absence of a statutory time limitation, the inherent power of a trial court to remit or mitigate for a surety a forfeiture of bail may be exercised not only before a final order of forfeiture and before the payment of the bail money into the public treasury *but also thereafter* upon a showing of good cause if such remission or mitigation can be made without prejudice to the state.[7] The general rule is that relief from forfeiture will not be granted where the prosecution has been deprived of proof by delay or has otherwise been adversely affected.[8] The timeliness, however, of an application for relief from bail forfeiture is a factor to be considered by the trial court in exercising its discretion.[9]

■ The fact that a defendant is ultimately found innocent is of no controlling significance. A proceeding for the forfeiture of bail, or for a mitigation of forfeited bail, although it originates with a criminal action, is civil in its nature and does not involve the guilt or innocence, or the conviction or acquittal of any person.[10] Bail has nothing to do with the punishment of the accused even if he should be found guilty. The purpose of a recognizance or bail bond is to secure the attendance of the accused in order that all questions touching upon his guilt *or innocence* may be determined, and, therefore, it follows that in a proceeding for the mitigation of a bail

[7] 6 Am. Jur., Bail and Recognizance, §§ 119, 121, 122, 205, 206; United States v. Jenkins (4 Cir.) 176 F. 672, 20 Ann. Cas. 1255. See, United States v. Feely, 1 Brock. 255, 25 Fed. Cas. No. 15,082; United States v. Kelleher (2 Cir.) 57 F. (2d) 684, 84 A. L. R. 414; 8 C. J. S., Bail, § 91b; Annotation, 84 A. L. R. 427.

[8] 6 Am. Jur., Bail and Recognizance, § 121; Annotation, 84 A. L. R. 450.

[9] Matter of Sayles, 84 App. Div. 210, 82 N. Y. S. 671 (reversing 40 Misc. 135, 81 N. Y. S. 258, 13 N. Y. Ann. Cas. 27, 17 N. Y. Cr. 234); 6 Am. Jur., Bail and Recognizance, § 205; see, Annotation, 84 A. L. R. 427; United States v. Jenkins, *supra.*

[10] People v. Rubright, 241 Ill. 600, 89 N. E. 713; United States v. Davenport (D. C.) 266 F. 425, affirmed, Rheiner v. United States (5 Cir.) 276 F. 803; 6 Am. Jur., Bail and Recognizance, § 149.

forfeiture the criminal guilt or innocence of the accused is wholly immaterial.[11]

■ In passing upon the question of whether a trial court has abused its discretion in denying or granting a remission or mitigation of a bail forfeiture in the light of the facts of the individual case, it is necessary to keep in mind the purpose of bail and the civil nature of the proceedings and the burden of proof as well as the cause, purpose, and length of defendant's absence; the good faith of the surety as measured by the fault or wilfulness of the defendant; the good faith efforts of the surety—if any—to apprehend and produce the defendant; and the prejudice—by way of delay or otherwise—to the state, in its administration of justice.

The primary purpose of bail in a criminal case is not to increase the revenue of the state or to punish the surety but to insure the prompt and orderly administration of justice without unduly denying liberty to the accused whose guilt has not been proved. Its purpose is to relieve the accused of imprisonment and the state of the burden of detaining him pending the trial and at the same time, by placing him in the protective custody of a surety—a jailer of his own choosing—, to insure his presence for trial at the call of the court without in any way delaying, impairing, or unduly burdening the administration of justice or in any manner prejudicing the state in its prosecution.[12] The procurement or use of bail to enable the accused to evade, delay, or cripple the prompt and effective administration of justice is directly contrary to any legitimate purpose for which bail is authorized in any criminal proceeding.

■ In passing to a consideration of whether the trial court abused its discretion in denying petitioner's application, it is not

[11]People v. Rubright, *supra;* see, Annotation, 84 A. L. R. 446.

[12]United States v. Kelleher (2 Cir.) 57 F. (2d) 684, 84 A. L. R. 414; see, United States v. Lee (D. C.) 170 F. 613; United States v. Jenkins (4 Cir.) 176 F. 672; United States v. Feely, 1 Brock. 255, 25 Fed. Cas. No. 15,082; Craig v. Commonwealth, 288 Ky. 157, 155 S. W. (2d) 768; State v. Wright, 193 Okl. 383, 143 P. (2d) 801; 6 Am. Jur., Bail and Recognizance, §§ 6, 121, 122; 8 C. J. S., Bail, §§ 4 and 30; Annotation, 84 A. L. R. 420.

to be overlooked that the burden of proof to establish a justification for a mitigation of forfeited bail rests upon the applicant.[13] At the outset we have the question of whether there was a wilful default. A wilful default under a bail bond means the wilful default of the principal—the defendant—and not of the surety.[14] Petitioner contends that his flight and absence from the jurisdiction was not wilful or voluntary but was justifiable because (1) in the course of the trial he found that he was being denied a fair and impartial trial according to due process of law and (2) because threats were made on his life. These contentions are to be resolved in the light of the general rule that the question of the credibility and the sufficiency of the evidence as to the cause of the defendant's flight from the jurisdiction and of his subsequent failure to appear until he was forcefully apprehended is to be decided by the trial court in the light of all the surrounding facts and circumstances, and its decision will not be disturbed except for an abuse of discretion.[15]

The evidence clearly sustains a finding that Shetsky fled to evade the orderly administration of justice and not because he thought his life was in danger or because he had any reason to believe he would be denied a fair trial. Assuming *arguendo* that he was threatened by unknown persons over the telephone, that burly and rough-looking men referred to as "goons" were present at his trial, and that people leered at and expressed their contempt for him as he entered and left the courtroom, there is little evidence that such threats and conditions disturbed him or induced his flight. In the first place, neither the petitioner, his counsel, nor anyone else saw fit to inform the court of any possible danger or to ask for protection of any kind. Likewise, no such report or request was made to the Minneapolis police department or to the sheriff's office of Hennepin county. Furthermore, it is not to be

---

[13]United States v. Costello (6 Cir.) 47 F. (2d) 684; United States v. Libichian (7 Cir.) 113 F. (2d) 368; United States v. Barnett (D. C.) 22 F. Supp. 394; 8 C. J. S., Bail, § 93.

[14]United States v. Kelleher (2 Cir.) 57 F. (2d) 684, 84 A. L. R. 414.

[15]State v. Wright, 193 Okl. 383, 143 P. (2d) 801; 6 Am. Jur., Bail and Recognizance, §§ 120 and 207; 8 C. J. S., Bail, §§ 91 and 93b.

overlooked that petitioner during the trial had the protection of a bodyguard. That he did not flee because he thought his life was in danger is corroborated by what he told the agent of the Federal Bureau of Investigation when he was finally apprehended in California. He told the agent that he left *because attorneys had told him that the trial was not going well.* In no manner did he indicate that his flight was caused by threats upon his life. Taking the evidence as a whole the trial court could clearly find that he did not flee because of any threat to his life.

There was also no abuse of discretion by the trial court when it rejected his further contention that he fled because he was being denied a fair trial. He alleges that at the first trial he was confronted with false testimony by two witnesses; namely, Hilda Castle and Ruth Hutchinson. At the first trial each of these two witnesses testified that she had seen Shetsky fire two shots at Schneider and had heard other shots fired. At the second trial Ruth Hutchinson apparently did not testify, but Hilda Castle said that both she and Ruth were so intoxicated the night that Schneider was shot that neither of them saw nor remembered what had then transpired. The testimony which they gave at the first trial was however corroborated by other witnesses. Under these circumstances we cannot say that it was error to find the second of their two contradictory statements to be false rather than the first. It is also significant that petitioner made no mention of false testimony to the agent of the Federal Bureau of Investigation who arrested him and also that he made no mention of such testimony in giving the reason for his flight in the habeas corpus proceedings. It is petitioner's further contention that he fled because he was not receiving a fair trial in that the trial judge made certain prejudicial remarks. In this regard it is enough to note that the only acts indicative of a denial of a fair trial occurred after, *and because of,* petitioner's unjustifiable flight.

Taking into consideration the evidence as a whole and all the surrounding circumstances, it is difficult to understand how the trial court could have come to any other conclusion than that peti-

tioner's flight was wilfully made for the sole reason that he thought his trial was not progressing favorably. He fled to evade and to obstruct the orderly administration of justice. He was gone for nearly 18 months, and during that time he made no effort to report to the authorities. His very conduct branded him as a wilful fugitive from justice. He did everything to conceal his identity and his whereabouts by assuming a series of false names and by darting from one state to another and even by going to a foreign country. His unjustifiable flight and conduct not only delayed and thwarted the administration of justice but also prejudiced the state by causing it and other public authorities to incur a heavy expense in effecting his apprehension. His wilful and unjustifiable default as a principal of the bail bond is chargeable to his surety. It is also to be noted that the surety made no effort whatsoever to arrest the defendant or to produce him before the court but simply relieved itself of all liability by paying the bail money into court. There are no extenuating or mitigating circumstances which would justify a remission of any part of the bail money to the surety. It follows that the petitioner, as the assignee of the surety, can have no greater rights.

The order of the trial court is affirmed.

Affirmed.

LORING, CHIEF JUSTICE (dissenting).

In spite of the learned discussion by the majority of the court of the various aspects of law relative to the forfeiture of bail money and relief therefrom—with most of which I agree—, I find myself in disagreement with the application of the law to the case at bar.

We have before us not only the circumstance of adjudicated innocence but a whole chain of circumstances which, under M. S. A. 629.59, should be considered on the application for relief. That section does not limit itself to the grounds of relief which would be sufficient in equity but provides for relief on broad grounds, "according to the circumstances of the case and the *situation of the party,* * * *." (Italics supplied.)

This man, who seeks relief, has not only been adjudicated to have been innocent of the crime charged in the indictment, but he has served 38 months under a sentence for that crime adjudicated to have been wrongfully imposed upon him in a trial in which it has been adjudicated that he was subjected to prejudicial error in a county where it has also been adjudicated that he could not obtain a fair trial. While the trial was adjudicated unfair specifically on the basis of certain remarks of the trial judge occasioned by the absence of defendant, there were a total of 18 assignments of error, which reversal on the one count made it "unnecessary to discuss or consider * * *." State v. Shetsky, 229 Minn. 566, 575, 40 N. W. (2d) 337, 342. At least, one other irregularity not related to defendant's absence was pointed out. Furthermore, an analysis of the remarks that caused the reversal indicates a hostile attitude on the part of the trial judge from the very inception of the prosecution. The trial court itself furnished ample evidence of its hostile attitude toward Shetsky prior to his flight when it explained to the jury how the constitution required him to let Shetsky out on bail and said (229 Minn. 572, 40 N. W. [2d] 340) :

"* * * I didn't have any option about it. If I had, I wouldn't have put him out on bail; * * *."

In the determination that defendant could not obtain a fair trial in Hennepin county, Judge Weeks, judge of the district court for Hennepin county, in a very thorough and learned memorandum, pointed out that many of the reasons why defendant could not obtain a fair trial in that county were present before his flight:

"This case has reached the proportions of a 'cause celebre'. Even when the case was first tried over four and one-half years ago, the trial judge subsequently said 'this has been a notorious case, and there have been a thousand and one rumors.' From its inception this case has aroused public interest far beyond that of any of the cases referred to or any other previously tried in this county in the past twenty-five years. The personages involved in the case aroused unusual interest. The locale of the homicide aroused much specu-

lation as it took place in a well-known night club after closing hours during the course of a heavy drinking party and the altercation preceeding [sic] the demise of Schneider."

While it has been adjudicated by this court, in an opinion by this writer, that defendant's flight was voluntary, there nevertheless was uncontradicted evidence of extreme, mitigating circumstances which prompted defendant to choose flight. That Shetsky sensed that he could not get a fair trial and voluntarily fled the jurisdiction on that account is not to be doubted from the record. There was evidence that defendant's counsel had indicated to him that he could not obtain a fair trial because of certain religious, racial, and political considerations. That the attitude of the courtroom spectators was hostile is to say the very least. The fact that defendant's flight was voluntary may well waive his right to be present during trial and preclude his right to a new trial because of such absence; but, in considering a return of his bail money, it should not preclude an examination of the circumstances prompting such "voluntary" flight. It is my opinion that the legislature had such considerations in mind when it enacted § 629.59.

There is no showing whatever that the state was prejudiced in obtaining witnesses by the 18 months' delay caused by his flight or even by the 38 months of unjust incarceration. There was no question but that Shetsky shot Schneider. The only question for the jury was whether he was justified in so doing. That it took Shetsky's friends some years to raise the funds to finance a habeas corpus proceeding should not count against him. It was the fault of the state, not his, that he was illegally imprisoned. Neither he nor his sureties should be penalized for establishing his innocence.

In my opinion, the trial court did not exert a judicial discretion, and its decision should be reversed. If the majority opinion is a sound application of the law and if the trial court's action is a proper exertion of judicial discretion under § 629.59, then it would seem futile under any circumstances to apply for relief from forfeiture.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.