# STATE OF MINNESOTA
# IN COURT OF APPEALS
# C3-98-710

Harold Farsdale,
Appellant,

State of Minnesota,
Plaintiff,

vs.

Oscar Rios Martinez,
Respondent.

**Filed November 24, 1998**
**Reversed and remanded**
**Klaphake, Judge**

Clay County District Court
File No. K6-97-235

Richard E. Edinger, 200 5th St. S., Ste. 103, Moorhead, MN   56560 (for appellant)

Todd S. Webb, Clay County Attorney, P.O. Box 280, Moorhead, MN 56561-0280 (for plaintiff)

Considered and decided by Shumaker, Presiding Judge, Crippen, Judge, and Klaphake, Judge.

## S Y L L A B U S

1.      In determining whether to order forfeiture of a bail bond, the trial court must exercise its discretion and consider, among other factors, the proportionality of any prejudice to the state compared to the amount of the bail bond to be forfeited.

2.      When the trial court's decision to forfeit a bond is against logic and facts on the record, a reviewing court will find an abuse of discretion.

## O P I N I O N

**KLAPHAKE**, Judge

Appellant Harold Farsdale, a bail bondsman, posted a $50,000 bond for respondent Oscar Rios Martinez. Respondent pleaded guilty to second-degree controlled substance crime but failed to appear for sentencing. Respondent was taken into custody approximately two months later. The district court thereafter ordered forfeiture of the bond, finding prejudice to the state in its expenditure of $414 to effectuate respondent's capture and finding appellant's efforts to apprehend respondent insufficient. We reverse and remand.

### FACTS

On February 13, 1997, respondent was arrested for first-degree controlled substance crime in violation of Minn. Stat. § 152.021, subds. 1(1), 3(a) (1996). Appellant, a retired highway patrolman doing business as Best Bonding, posted respondent's $50,000 bail bond and received $5,000 from respondent as security.

Respondent, who had no prior criminal history, entered a guilty plea. At respondent's first sentencing hearing on October 13, 1997, the court granted the state's motion to postpone sentencing and granted respondent's request to go to Texas to relocate his family. Because respondent had cooperated with law enforcement in other investigations and prosecutions, the state moved to amend the complaint to reduce the charge to second-degree controlled substance crime under Minn. Stat. § 152.022, subds. 1(1), 3(a) (1996), and moved for a downward durational departure from the presumptive guidelines sentence.

Respondent failed to appear at his second sentencing hearing, scheduled for October 27. After respondent again failed to appear at his rescheduled hearing on October 31, the court ordered a bench warrant for respondent's arrest and ordered forfeiture of the bond.

According to appellant, he personally investigated respondent's whereabouts by making many telephone calls to respondent's relatives in Texas, as well as seeking assistance

from respondent's attorneys in Fargo and Texas, from DEA agents and police officers in Minnesota and Texas, and from a Texas bail bondsman with whom appellant made financial arrangements contingent on the bondsman's apprehending respondent. Appellant claims that he did not personally go to Carrizo Springs, Texas, where respondent's family was residing, because he was told that respondent had fled to Mexico to hide from drug dealers.

After appellant determined that the Clay County arrest warrant was limited to Minnesota and North Dakota, he contacted the Clay County attorney, who enlarged the coverage to include other states. Respondent was thereafter arrested on the outstanding warrant in San Antonio, Texas, on January 12, 1998, more than two months after he failed to appear for sentencing.

Appellant moved to reinstate and discharge the bond. The trial court again ordered the bond forfeited. The memorandum of law attached to this second forfeiture order declined to find credible respondent's claim that he feared for his own safety. The court also found that respondent's flight delayed the administration of justice and prejudiced the state "by adding additional expenses in his capture and continued litigation." Finally, the court noted that appellant

> made no attempt to apprehend [respondent] beyond checking on whether the warrant was listed by the N.C.I.C. in states other than in Minnesota and North Dakota. [Appellant] did not assist in his capture or produce [respondent] for sentencing.

Appellant then initiated this appeal.

## ISSUE

Did the trial court abuse its discretion in ordering forfeiture of the $50,000 bail bond?

## ANALYSIS

When a person under a bond fails to perform, the court may order the surety to "pay * * * the amount for which the surety was bound as surety." Minn. Stat. § 629.58 (1996). The

court may also "forgive or reduce the penalty [of a forfeited bond] * * * on any terms and conditions it considers just and reasonable."   Minn. Stat. § 629.59 (1996). "The purpose of a * * * bail bond is to secure the attendance of the accused in order that all questions touching upon his guilt or innocence may be determined."   *Shetsky v. Hennepin County*, 239 Minn. 463, 470, 60 N.W.2d 40, 46 (1953); *see State v. Super*, 281 Minn. 451, 461, 161 N.W.2d 832, 838-39 (1968) (purpose of bail is to "reconcile the defendant's interest in pretrial liberty with the need for assurance he will return for trial"); *State v. Mastrian*, 266 Minn. 58, 59, 122 N.W.2d 621, 622 (1963) (purpose of bail is to permit defendant's release if trial appearance can otherwise be guaranteed).

In determining whether a trial court abused its discretion in a bail forfeiture decision, a reviewing court considers

the purpose of bail and the civil nature of the proceedings and the burden of proof as
well as the cause, purpose, and length of defendant's absence; the good faith of the surety as measured by the fault or wilfulness of the defendant; the good faith efforts of the surety--if any--to apprehend and produce the defendant; and the prejudice--by way of delay or otherwise--to the state, in its administration of justice.

*Shetsky*, 239 Minn. at 471, 60 N.W.2d at 46.   In a bail bond forfeiture action, the applicant has "the burden of proof to establish a justification for a mitigation of forfeited bail."   *Id.*, 239 Minn. at 472, 60 N.W.2d at 46.

For several reasons, we conclude that the trial court abused its discretion in ordering the bail bond forfeited in this case.   First, because the bail bond served its primary purpose-- to secure respondent's appearance at trial--its forfeiture at this point would merely serve to punish appellant or increase the state's revenue.   *See id.*, 239 Minn. at 471, 60 N.W.2d at 46 ("The primary purpose of bail in a criminal case is not to increase the revenue of the state or to punish the surety[.]").   The claimed amount spent by the state in effectuating respondent's

4

capture was $414, a de minimis amount compared to the $50,000 bond. In addition, although the trial court questioned the amount of the security appellant required respondent to pay before issuance of the bond, appellant had no knowledge or notice at that time that the trial court would later permit respondent to go to Texas before sentencing. Finally, respondent was captured after being at large for only two months. Under these circumstances, the forfeiture of the bail bond was substantially disproportionate to any prejudice suffered by the state.

Second, although the trial court found appellant expended only minimal efforts to apprehend respondent, the record establishes otherwise. Appellant made numerous attempts to locate respondent through contacts with family, friends, and multi-state law enforcement. Appellant requested that law enforcement expand the scope of their search to include Texas, a request that ultimately led to respondent's arrest. Appellant's decision not to go to Texas personally does not negate his other, numerous efforts to locate respondent.

Third, although the trial court found respondent's claim of danger to himself not credible, his claim was independently corroborated by a DEA agent, who stated that respondent's life would be endangered if he stayed in Minnesota. Indeed, respondent's conduct, which until his flight had been very cooperative, suggests flight for a reason other than merely to evade the administration of justice. Thus, the record fails to provide any reason to disbelieve respondent.

For all of these reasons, we reverse the trial court's forfeiture of the bail bond as an abuse of discretion. *Cf. Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984) (a trial court abuses its discretion when its conclusion is against logic and facts on record). We remand for the trial court to determine the appropriate amount of expenses associated with respondent's capture and to deduct that amount from the bond remission amount. In any case, the expenses are not to exceed 25 percent of the bail bond.

## D E C I S I O N

We reverse the trial court's ordered forfeiture of the $50,000 bail bond and remand for a determination of expenses to be offset from the bond remission amount.

**Reversed and remanded.**