*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0920**

State of Minnesota,
Respondent,

vs.

Shawn Marie Stellmach,
Defendant,

Midwest Bonding, LLC,
Appellant.

**Filed January 12, 2015
Reversed and remanded
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-10-31490

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

James McGeeney, Doda & McGeeney, P.A., Rochester, Minnesota (for appellant)

        Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellant bonding company's $35,000 bond was forfeited after defendant failed to appear at sentencing for felony identity theft. Because the district court failed to make findings considering appellant's good-faith effort to locate and return defendant, as well as specific findings on any prejudice to the state, we reverse the order forfeiting the bond and remand to the district court for further findings on all of the *Shetsky* factors. We reverse and remand.

## FACTS

In July 2010, defendant Shawn Stellmach was charged with felony identity theft and felony financial transaction card fraud in Hennepin County District Court arising from her participation in an identity theft ring. Defendant posted a $35,000 bond issued by appellant Midwest Bonding, LLC guaranteeing her appearance at all future court dates.

On November 5, 2012, defendant pleaded guilty to felony identity theft, and, in return, the state dismissed the felony financial-transaction-card-fraud charge. Defendant was ordered to appear for sentencing on January 7, 2013. A bench warrant was issued for defendant's arrest after she failed to meet with her probation agent to complete a presentence investigation. When defendant failed to appear for sentencing, the district court ordered the $35,000 bond forfeited.

Midwest Bonding moved to reinstate and discharge the forfeited bond and for a hearing "if the [c]ourt deems such a hearing necessary" on April 4, 2013. The state did

not oppose Midwest Bonding's motion. In its supporting affidavit, Midwest Bonding recounted its efforts to locate and apprehend defendant. Midwest Bonding claimed that it received notification of the forfeiture of the bond on January 17 and immediately began investigative efforts to locate defendant and contacted the bond indemnitor. When these efforts proved unsuccessful, Midwest Bonding hired a professional fugitive recovery agent at a cost of $3,500 to investigate defendant's whereabouts. The agent learned that defendant was arrested on March 12 and was in custody on new criminal charges in Ramsey County. Midwest Bonding took affirmative steps with the Hennepin County Sheriff's Department to ensure that upon resolution of defendant's charges in Ramsey County, she would be turned over to Hennepin County to appear on the outstanding bench warrant.

On May 1, defendant was sentenced to 84 months in jail for felony identity theft in Hennepin County District Court. Defendant was ordered to pay restitution in the amount of $19,000.[1] The district court denied Midwest Bonding's motion for reinstatement and discharge, and its motion for a hearing on June 13, 2013. Midwest Bonding moved the

---

[1] If the district court determines that some or all of the bond proceeds remain forfeited, it may consider whether any of the forfeited bond proceeds should be applied to restitution. *See State v. Carlson*, No. A08-0980, 2009 WL 749587, at *3-4 (Minn. App. Mar. 24, 2009); *see also* Minn. Stat. § 485.018, subd. 5 (2014) ("Except for those portions of forfeited bail *paid to victims* pursuant to existing law, the court administrator shall forward all revenue from fees and forfeited bail collected under chapters 357, 487, and 574 to the commissioner of management and budget for deposit in the state treasury and credit to the general fund. . . ." (emphasis added)). It is not clear from the record whether or not the district court considered defendant's restitution obligation upon forfeiting the bail.

district court for a hearing to reconsider its request to reinstate and discharge the forfeited appearance bond, and the district court denied this motion. This appeal follows.

**D E C I S I O N**

This court reviews a district court's reinstatement decision for an abuse of discretion. *State v. Vang*, 763 N.W.2d 354, 357 (Minn. App. 2009). "[T]he court may forgive or reduce the penalty according to the circumstances of the case and the situation of the party on any terms and conditions it considers just and reasonable." Minn. Stat. § 629.59 (2012). When determining whether the district court abused its discretion, we consider the following factors:

> (1) the purpose of bail, the civil nature of the proceedings, and the cause, purpose, and length of the defendant's absence; (2) 'the good faith of the surety as measured by the fault or willfulness of the defendant'; (3) 'the good-faith efforts of the surety—if any—to apprehend and produce the defendant'; and (4) any prejudice to the state in its administration of justice.

*State v. Storkamp*, 656 N.W.2d 539, 542 (Minn. 2003) (quoting *In re Application of Shetsky*, 239 Minn. 463, 471, 60 N.W.2d 40, 46 (1953)). Minnesota courts have determined that "bail statutes are remedial and should be interpreted liberally to ensure that their purpose is accomplished." *Id.* at 541. In some cases, it is appropriate for the district court to mitigate the forfeited bond amount. Minn. Stat. § 629.59. Midwest Bonding bears the burden of proving that reinstatement and discharge of a bail bond is justified. *See Shetsky*, 239 Minn. at 472, 60 N.W.2d at 46. Because the district court's order relied almost exclusively on the second factor—the good-faith effort of Midwest

4

Bonding as measured by defendant's fault or willfulness—we begin our analysis with this factor.

A defendant's willfulness or bad faith is attributable to the surety. *Id.* at 471, 60 N.W.2d at 46. Midwest Bonding concedes that the record shows that defendant willfully failed to appear, but argues that this factor remains unclear without a hearing. In its abbreviated order, the district court concluded that the appearance bond would remain forfeited because defendant failed to appear at sentencing, was arrested on new charges in Ramsey County during her absence, and made no attempt to explain her failure to appear for sentencing. The record before us does not reveal defendant's motivations or the circumstances for her nonappearance. Because Midwest Bonding failed to submit any information suggesting that defendant had a justifiable reason for failing to appear as scheduled for sentencing, the district court was free to consider this factor as a basis for not reinstating the bond. *See id.* at 473-74, 60 N.W.2d at 47-48.

The district court was not required to order a hearing despite Midwest Bonding's request for a hearing on its motion to have the bond reinstated and discharged. *See Vang*, 763 N.W.2d at 356-57 (concluding that it is within the district court's discretion to determine the need for a bail-reinstatement hearing under Minn. R. Gen. Pract. 702(f) where appellant failed to specifically indicate that a hearing was necessary and failed to put forth any argument on appeal as to any factual or legal information that it would have presented to the district court that was not already before the court). Here, Midwest Bonding requested a hearing only "if the [c]ourt deems such a hearing necessary" and did

not argue in its motion that it would have presented any factual or legal information that was not already before the district court.

"The primary purpose of bail in a criminal case is not to increase the revenue of the state or to punish the surety but to insure the prompt and orderly administration of justice without unduly denying liberty to the accused whose guilt has not been proved." *Shetsky*, 239 Minn. at 471, 60 N.W.2d at 46. "Another [purpose] is to encourage sureties to locate, arrest, and return defaulting defendants to the authorities to facilitate the timely administration of justice." *Vang*, 763 N.W.2d at 358. We conclude that the purpose of bail was largely accomplished in this case. Defendant had already pleaded guilty before failing to appear for sentencing on January 7, was located in the custody of Ramsey County within 90 days after the arrest warrant was issued, and appeared at a sentencing hearing on May 1. *See Farsdale v. Martinez*, 586 N.W.2d 423, 425-26 (Minn. App. 1998) (concluding that appearance bond served its primary purpose of securing defendant's appearance at trial when defendant was secured after being at large "for only two months"); *cf. Vang*, 763 N.W.2d at 358 (noting that surety had not achieved one of the purposes of bail when it failed to return absent defendant to custody); *State v. Due*, 427 N.W.2d 276, 278 (Minn. App. 1988) (stating that bonding company that took no steps to apprehend defendant who failed to appear for court "cannot absolve itself of blame" when it did not monitor defendant's appearances), *review denied* (Minn. Sept. 28, 1988).

The burden is on the state to prove any claimed prejudice. *State v. Askland*, 784 N.W.2d 60, 62 (Minn. 2010). In its order, the district court implicitly found that the state

6

was prejudiced because defendant's absence caused her sentencing to be delayed approximately four months. Prejudice to the state includes the delay and thwarting of the administration of justice, as well as the expenses incurred by the state in apprehending the defendant. *Shetsky*, 239 Minn. at 474, 60 N.W.2d at 48. There is little evidence in the record suggesting that the state suffered any prejudice from defendant's absence, and the state did not contest Midwest Bonding's motion for reinstatement of the bond or file a brief with this court. We conclude that the district court's focus on defendant's bad-faith conduct eclipsed any consideration of Midwest Bonding's good-faith efforts to locate and return defendant to custody. In *Storkamp*, the Minnesota Supreme Court cautioned against this type of conclusory analysis of the *Shetsky* factors, stating:

> [I]f we were to now hold that the bad faith of the defendant automatically trumps the surety's good-faith effort to return the defendant to justice and the lack of prejudice to the state, those factors would become largely irrelevant except when the surety can prove that the failure to appear is justified. That result would undermine and frustrate the purposes of encouraging the surety to voluntarily surrender the bond amount, as well as the purpose of encouraging sureties to locate, arrest, and return defendants who have absconded.

656 N.W.2d at 543. We recognize that Midwest Bonding did not go to the same lengths in securing defendant as the bonding company in *Storkamp*, which was wholly responsible in tracking down and returning defendant to custody in less than two months. *See id.* at 540-41. Here, defendant was already in custody at the Ramsey County jail when Midwest Bonding learned of her whereabouts.

The district court erred when it failed to make findings under the third *Shetsky* factor, Midwest Bonding's good-faith efforts in securing and producing defendant, and

7

by only making a conclusory finding as to the fourth *Shetsky* factor, prejudice to the state. We remand to the district court for findings on all of the *Shetsky* factors, and for a determination as to whether the bond proceeds, or any portion of the bond proceeds, should be forfeited based on defendant's non-appearance. *See* Minn. Stat. § 629.59. If helpful, the district court may order a hearing.

**Reversed and remanded.**