*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0498**

State of Minnesota,
Respondent,

vs.

Brian Lee Hall,
Defendant,

Midwest Bonding, LLC,
Appellant.

**Filed January 22, 2024**
**Affirmed**
**Ross, Judge**

Anoka County District Court
File No. 02-CR-20-3189

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brad Johnson, Anoka County Attorney, Robert I. Yount, Assistant County Attorney, Anoka, Minnesota (for respondent)

William A. Erhart, Erhart Legal, LLC, Anoka, Minnesota (for appellant)

        Considered and decided by Ross, Presiding Judge; Schmidt, Judge; and Halbrooks,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**ROSS**, Judge

Midwest Bonding LLC posted two bonds on behalf of Brian Hall totaling $32,000 to secure Hall's reappearance in the district court following his arrest on multiple charges. Hall did not appear, and the district court ordered both bonds forfeited. The district court extended the payment deadline, but after nine months of Hall's failure to appear, it denied any further extensions and ordered immediate payment. Midwest Bonding apprehended Hall the following month and petitioned the district court to order the bonds reinstated and discharged. The district court denied the petition because more than 180 days had passed since the bonds were forfeited, applying Minnesota General Rule of Practice 702(f). Because Midwest Bonding fails to establish that the district court abused its discretion by strictly applying the rule, we affirm.

## FACTS

Respondent State of Minnesota charged Brian Hall with multiple crimes in May 2020. Appellant Midwest Bonding LLC posted a $30,000 appearance bond, allowing Hall's release from jail before his trial scheduled for March 2021. Hall did not appear for trial and was arrested. Midwest Bonding posted an additional $2,000 bond for Hall's release before the trial was rescheduled for April 18, 2022. Hall again failed to appear for trial, and the district court ordered both bonds forfeited. Midwest Bonding had 90 days to pay the bond amounts. Hall was again apprehended, and in June 2022, Midwest Bonding moved the court to reinstate and discharge the bond. The district court denied Midwest

Bonding's motion, but it released Hall from custody on a third bond that Midwest Bonding posted and extended the deadline for payment until October 2022.

On the day of the extended deadline, Midwest Bonding again moved the district court to reinstate and discharge the bonds. The district court again declined, instead extending the payment deadline until December 31, 2022. Hall had not reappeared since his June release, and on December 28 Midwest Bonding again moved the district court to reinstate and discharge the bonds. The district court denied the motion in January 2023. This time it did not extend the payment deadline, leaving the payment on the bonds immediately due. The next month Midwest Bonding apprehended Hall.

Midwest Bonding moved the district court to reinstate and discharge the bonds. The district court denied the motion because the bonds had already become due under the court's January order. Midwest Bonding and the state stipulated in March 2023 that the district court could order the bonds reinstated and discharged and charge Midwest Bonding a 10% penalty. The district court denied the stipulated request, implicitly referencing Minnesota General Rule of Practice 702(f) and reasoning that the reinstatement petition should fail because it was filed more than 180 days after the initial bond had been forfeited.

Midwest Bonding appeals.

## DECISION

Midwest Bonding argues that the district court improperly denied its stipulated request for reinstatement and discharge of the bonds it posted to secure Hall's appearance in court. We review the district court's decision to deny a petition for reinstatement of a

3

forfeited bond for an abuse of discretion. *State v. Askland*, 784 N.W.2d 60, 62 (Minn. 2010). For the following reasons, we hold that the district court acted within its discretion.

Midwest Bonding objects to the district court's strict application of Minnesota Rule of General Practice 702(f). That rule provides that "[n]o reinstatement of a forfeited bond or cash bail shall be allowed unless the petition and affidavit are filed within 180 days from the date of the order of forfeiture." A district court's ruling is an abuse of discretion if it is based on an erroneous interpretation of the law. *State v. Storkamp*, 656 N.W.2d 539, 541 (Minn. 2003). Midwest Bonding does not convince us that strictly following the rule constituted an abuse of discretion. The bonds were forfeited on April 19, 2022, and Midwest Bonding's most recently rejected petition for reinstatement and discharge was not filed until February 7, 2023, long after the 180-day restriction by rule. And the March 24 stipulation was of course even later. We cannot conclude that the district court abused its discretion by applying the plain terms of the rule.

Midwest Bonding listed one of its issues on appeal to be whether the district court abused its discretion "by finding that it had no jurisdiction to consider" its stipulated request to reinstate and discharge the appearance bonds. But it does not develop that claimed basis for reversal into any argument, and we therefore do not address it on the merits. *See State v. Yang*, 774 N.W.2d 539, 552 (Minn. 2009). We add that it does not appear that the district court based its decision on any lack of jurisdiction. Although the district court wrote, "Court has no jurisdiction[.] Bond forfeited," on a proposed order that Midwest Bonding included with its March stipulation, the district court specified in its contemporaneous written orders that it based its denial on the fact that "the Petition [was]

4

filed more than 180 days after the initial bond forfeiture on April 19, 2022." The jurisdictional reference has no bearing on our decision.

Midwest Bonding argues that the district court's decision rejecting its request for reinstatement was an abuse of discretion because district courts may modify their application of the General Rules of Practice to avoid a manifest injustice. It is true that the rule includes this exception. Minn. R. Gen. Prac. 1.02. But Midwest Bonding does not convince us that a "manifest injustice" results from the district court's decision to apply the rule here. Midwest Bonding bases its manifest-injustice contention on the representation of its attorney that "there is a long, well-established history of having such stipulations approved by the court, even when filed following expiration of 180-days after bonds have been forfeited." Midwest Bonding argues that because it relied on this asserted practice, it was manifestly unjust for the district court not to follow the practice. Midwest Bonding provided no affidavit of this practice, and it developed no factual record of its existence. We limit our review on appeal to facts supported by the record. Minn. R. Civ. App. P. 110.01, 115.04. And we observe that Anoka County indeed has established a standing order consistent with the district court's decision in this case. We add that, even if we relied on counsel's representations (and we do not suggest we have any reason to doubt them), we see no manifest injustice in the district court's choice to apply the rule as written rather than to follow any prior practice of leniency.

Midwest Bonding also contends that we should reverse because factors found in *In re Shetsky* support reinstatement and discharge. 60 N.W.2d 40, 46 (Minn. 1953). The problem with this contention is that the *Shetsky* court discussed factors to consider for bond

5

reinstatement outside the context of the 180-day period now established by rule. *Id. Shetsky* does not lead us to reverse.

We are not unsympathetic to Midwest Bonding's assertion that the public is well served by the pretrial release of some criminal defendants rather than holding them throughout the pendency of their cases. And we likewise acknowledge the benefit afforded to the public when bond companies expend additional resources to apprehend fugitive defendants after the 180-day period passes. But competing public-policy concerns also exist, and the rules take them into account. One of those concerns, for example, is the benefit that the public receives when rules and practices incentivize bond companies to diligently locate and apprehend criminal defendants within reasonable deadlines to avoid lengthy trial delays that might impact witness availability and burden the criminal-justice process. We do not base our decision on public policy, however, but on our conclusion that the district court did not abuse its discretion by applying the 180-day rule on its terms.

**Affirmed.**