STATE v. WRIGHT et al.

No. 30815. Oct. 26, 1943.

Rehearing Denied Dec. 14, 1943.

*143 P. 2d 801.*

Claude Hendon, County Atty., and M. L. Hankins, Asst. County Atty., both of Shawnee, for plaintiff in error.

Kenneth B. Kienzle, of Shawnee, for defendants in error.

RILEY, J. This is an appeal by the state from an order setting aside a for-feiture of an appearance bond given in a criminal case.

Pat Wright was charged before a justice of the peace in Pottawatomie county for the crime of burglary. On December 18, 1940, he gave an appearance bond in said case with W. M. Suggs and L. T. Fitzgerald as sureties. The condition of the bond was that Wright should personally be and appear before W. F. Durham, justice of the peace, on December 23, 1940, and abide by the order of the court.

On December 19, 1940, preliminary hearing was waived and the justice of the peace entered an order that said defendant be held to answer to the district court and "is released under his present bail on recommendation of the county attorney."

Transcript from the justice of the peace, including the appearance bond, was filed in the district court on February 4, 1941. Arraignment in the district court was set for February 17, 1941. The defendant did not appear. Thereupon the matter was continued for arraignment to February 24, 1941. The defendant did not appear on that date. Through his attorney he filed an application for a continuance, verified by said attorney on information and belief. The affidavit for continuance, among other things, stated:

"That the defendant is physically unable to attend court this day for arraignment and is sick in bed."

The application for continuance was denied, and the court entered an order forfeiting the bond. At that time the defendant, Pat Wright, was in Fort Smith, Ark. Extradition proceedings were instituted by the state, which Wright resisted. After hearing, Wright was ordered returned to Oklahoma for trial. In April, 1941, he was tried and convicted, on a new information but for the same offense. On June 30, 1941, within the same term of court in which the order forfeiting the bond was entered, the sureties on the bond filed their application to discharge and set aside the forfeiture. The state filed a general demurrer to the application and specifi-

cally demurred to each paragraph thereof. The demurrer was overruled, and the state filed an answer to the application. The matter was tried to the court, resulting in the finding:

"That the application of the sureties to set aside the order of this court formerly made on February 24, 1941, forfeiting the bail bond of Pat Wright in the case of State of Oklahoma v. Pat Wright is sufficiently established by the evidence and should be sustained."

An order was entered discharging the forfeiture of the bond, which in part was:

" . . . upon the condition that the sureties pay to the State of Oklahoma $125.00 within twenty-four hours from this date to cover the costs and expenses of the State of Oklahoma in extraditing and returning Pat Wright to the State of Oklahoma for trial . . . "

The state appeals, and the first contention is that the court erred in overruling the demurrer to the application.

In 22 O. S. 1941 § 1108, it is provided:

" . . . But, if at any time before the final adjournment of court the defendant or his bail appear and satisfactorily excuse his neglect, the court may direct the forfeiture to be discharged upon such terms as may be just. . . . "

There is nothing in said section that sets forth any requirement as to what an application of this kind must contain. The material part of said application is:

" . . . That the said defendant later appeared in this court and stood trial and was convicted and given a sentence of 12 years in the penitentiary at Mc-Alester, Oklahoma. . . .

"That the sureties on this bail bond did everything they could to get the defendant here for arraignment at the time the bond was forfeited. That they had their attorney, Kenneth B. Kienzle, call the said defendant over long distance at Ft. Smith, Arkansas. That they had him send the defendant telegrams by Western Union. That telephone calls and Western Union telegrams were received from the defendant during this time. That the defendant claimed to be ill and confined to his bed. That a copy of one such telegram received from the defendant is hereto attached marked 'Exhibit A' and made a part hereof. That the defendant was also advised by the attorney for the sureties to have his doctor get in touch with the judge of this court and advise the judge as to defendant's illness. That these petitioners are advised that the judge of this court did receive a telegram from defendant's doctor advising of said illness.

"That the sureties on this bond through their attorney, Kenneth B. Kienzle, assisted the county attorney's office and the sheriff's office in procuring the return of the said defendant from the State of Arkansas. That the attorney for petitioners together with witnesses made the trip from Shawnee, Oklahoma, to Ft. Smith, Arkansas, and appeared in the municipal court where the defendant was charged as a fugative. That they went to Little Rock, Arkansas, and appeared before the Governor of the State of Arkansas. That one of said witnesses testified before the Governor and was upon his testimony that requisition papers were signed by the Governor. That it became necessary to have someone testify before the Governor of the State of Arkansas that the defendant was in Shawnee, Oklahoma, at the time the alleged crime was committed and this testimony was supplied by the witness furnished by these sureties and whose expenses and fees were paid for by these sureties and said attorney for sureties.

"That the sureties through said attorney made numerous calls to the post office inspector at Muskogee, Oklahoma, and other officials in an effort to get the defendant to come into court. That the said sureties through their said attorney enlisted the help and support of the local post office inspector. That the matter was taken up with the federal probation officer at Oklahoma City when it was learned that the defendant was on a suspended sentence from the federal in the State of Texas and the probation officer for the federal government in the Northern District of the State of Texas was contacted in an effort to secure the return of the defendant.

"That the sureties have at all times co-operated with the local authorities and it was largely through the efforts of the sureties and their attorney that

the defendant had to return and stand trial and was subsequently convicted. That in equity and justice the bond forfeiture should be set aside by this court."

The copy of the telegram referred to and attached to the petition is as follows:

". . . Continue *arrangement* to later date confined since Tuesday with flu. (Signed) J. P. Wright."

The application in substance alleges that the defendant, Wright, failed to appear for arraignment under the claim that he was ill and confined to his bed; that he did later appear and stand trial; that his subsequent appearance was brought about largely by the efforts of the sureties; that the purpose of the bond had been satisfied. The application was sufficient to call for a hearing and alleged a state of facts sufficient to invoke the exercise of the discretion of the court as to whether the forfeiture should be set aside.

It is next contended that the court erred in permitting the surety Suggs to testify that he had no notice of the setting of the case against Wright in the district court for arraignment on February 24, 1941, and that Suggs was not present at the time.

The trial court explained his ruling on the admission of the testimony by stating:

" . . . The court is entitled to know what efforts the bondsman makes after he finds out about it to procure the defendant for trial."

Under that theory the evidence was admissible for the purpose of fixing the time when the witness Suggs first learned of the failure of defendant Wright to appear for arraignment.

It is next contended that the court erred in refusing to permit the witness to testify orally as to the provisions of the extradition laws of the State of Arkansas.

**Section 319, O. S. 1931 (12 O. S. 1941 § 484)** provides how the statutes, codes, and other written laws of other states may be proved. The provisions are:

"Printed copies in volumes of statutes, codes or other written law, enacted by any other State or territory, or foreign government, purporting or proved to have been published by the authority thereof, or proved to be commonly admitted as evidence of the existing law in the courts or tribunals of such state, territory or government, shall be admitted by the courts and officers of this state. . . . "

In Hinds et al. v. Atlas Acceptance Corporation, 178 Okla. 474, 63 P. 2d 29, it is held that the law of a sister state must be pleaded in order to be proved, and in the absence of such pleading and proof the laws of the sister state, including its general statutes, are presumed to be the same as the laws of this state. In this case the statute of Arkansas was not pleaded. Therefore, though the method of proof provided by our statute may not be exclusive, there was no error in refusing the proffered testimony for the reason that the statute sought to be proved by the oral testimony of the witness was not pleaded.

Finally, it is contended that the trial court erred in refusing to sustain the demurrer of the state to the evidence of the sureties; in overruling the state's demurrer to the evidence of the sureties, and overruling the motion for judgment in favor of the state at the close of all the evidence.

This raises the question of the sufficiency of the evidence. In this connection we do not find in the record a demurrer by the state to the evidence of the sureties at the close of all the evidence.

However, there is evidence tending to show that shortly after Pat Wright was released from custody under the bond in question, he left the State of Oklahoma and went to Fort Smith, Ark., and was there when his case was called for arraignment on February 24, 1941. There is some evidence tending to show that the absence was not willful. When he was first notified, he apparently

thought his presence was not necessary for arraignment. He wired his attorney to enter a plea of not guilty for him and to notify him as to the date of the trial. There is also some evidence from which the inference may reasonably be drawn that the defendant was ill at the time. The record further discloses that shortly after the forfeiture, counsel for the sureties conferred with the county attorney relative to the best way to secure the return of Wright. Counsel for the sureties was of the opinion that the sureties might extradite. The county attorney advised counsel that extradition could only be carried on in the name of the state. The county attorney then commenced extradition proceedings. Counsel for the sureties cooperated and worked with the county attorney. The sureties paid the expenses of counsel in said matter and paid the expenses of at least one witness to Little Rock, Ark., for the purpose of meeting anticipated testimony to the effect that Pat Wright was in Fort Smith, Ark. on the date the alleged burglary was committed in Pottawatomie county. True, the county attorney testified that all the efforts of counsel for the sureties were voluntary and were in fact of no value. However, the county attorney did confer with counsel for the sureties and recognized him as assisting in the matter to a certain extent. The state incurred expenses in the matter in the sum of $125. The record further discloses that the state lost nothing by reason of the absence of defendant on February 24, 1941. Wright was returned and put on trial at the same term of court and was convicted.

The general rule appears to be:

"It may be stated generally that a forfeiture will be vacated, or relief therefrom will be granted, where it appears that the default of the principal is excused to the satisfaction of the court. . . ." 8 C. J. S. 184.

And:

"Where there has been no willful default and where there has been a subsequent trial and conviction or acquittal of the accused, the purpose of the bail bond has been satisfied, in which case a proper matter is presented for the exercise of the discretion of the court, and the forfeiture should be set aside . . . " 6 Am. Jur. 120, § 189.

In Mahaney et al. v. State, 106 Okla. 152, 233 P. 725, it is said:

"The application herein to set aside the forfeiture, under said statute, is addressed to the discretion of the court. 6 C. J. 1050; State v. Morgan, 136 N. C. 593, 48 S. E. 604. The discretion referred to is necessarily a sound judicial and not an arbitrary one. State v. Johnson, 69 Wash. 612, 126 P. 56. It is the manifest intention of the statute to encourage the giving of bail, in proper cases. The right of bail is so fundamental that it is guaranteed in the Bill of Rights with certain qualifications. . . . "

Said case quotes with approval the following from United States v. Feely, 1 Brock. 255, Fed. Cas. No. 15,082:

"The object of a recognizance is, not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty. . . . If he be found guilty, he must suffer the punishment intended by the law for his offense, and it would be unreasonable to superadd the penalty of an obligation entered into only to secure a trial."

In State v. Olson et al., 127 Wash. 300, 220 P. 776, it is held:

"A return of bail is made to rest upon such terms as shall be just and equitable, and the Supreme Court will not reverse an order except for a manifest abuse of discretion."

In the latter case, in the opinion, it is said:

"Recognizing the encouragement which the law accords to the giving of bail and the return of fugitives to serve their sentences, and the encouragement which should be afforded vigilant and thrifty bondsmen in assisting in the thorough administration of the law's penalties, still, as we have indicated, the return of the bail money is a matter in which the trial court has a wide latitude for the exercise of its judgment, and we are not prepared to say that it was improperly exercised in this case."

Under all the facts and circumstances as shown by the record, we are unwilling to say that the order of the court so entered was an abuse of sound judicial discretion.

Affirmed.

CORN, C. J., GIBSON, V. C. J., and WELCH and DAVISON, JJ., concur. OSBORN and HURST, JJ., dissent. ARNOLD, J., concurs in conclusion. BAYLESS, J., absent.