**STATE of Oklahoma, Plaintiff in Error,**

**v.**

**Roy L. SCOTT and The Summit Fidelity & Surety Company, Defendants in Error.**

No. 39363.

Supreme Court of Oklahoma.

Jan. 16, 1962.

Rehearing Denied May 23, 1962.

Harry D. Pitchford, County Atty., of Okmulgee County, Okmulgee, for plaintiff in error.

J. I. Pitchford, II, Boatman, Pugsley & Boatman, by Edgar R. Boatman, Okmulgee, for Summit Fidelity and Surety Company, a corporation.

DAVISON, Justice.

This is an appeal by the State from an order setting aside a forfeiture of an appearance bond given by Roy L. Scott in a criminal case. Summit Fidelity and Surety Company, a corporation (hereinafter referred to as Summit) has filed a cross-appeal from an order refusing to set aside a forfeiture of an appearance bond required of and furnished by Roy L. Scott as a material witness in a criminal case. Summit is surety on both bonds. Scott did not appeal.

There is little if any dispute as to the facts. Paula Helen Kinnison, daughter of Roy L. Scott, was charged with a criminal offense in case numbered 4668 in the District Court of Okmulgee County. The case was set for trial May 13, 1959, and a subpoena was issued and served upon Roy L. Scott to appear and testify as a witness for the State. At the time of the service

Scott stated he would not attend the trial. There is testimony that Scott left the State of Oklahoma. On the day of trial Scott did not appear. A bench warrant was issued for his arrest and the case was stricken at the request of the County Attorney because of the absence of Scott as a material witness.

In January, 1960, Scott was apprehended and brought before the court in No. 4668 and was required to furnish a $750 bond for his appearance as a material witness in that case. At the same time the State charged Scott with the offense of indirect contempt of court (case numbered 4712) for failure to obey the subpoena directing him to appear at the May 13, 1959, trial. Scott pleaded not guilty and was admitted to bail and furnished a $2500 bond for his appearance.

The bonds required Scott's appearance at the next term of court "and there remain from day to day and term to term of said Court until discharged by due course of law."

Both cases No. 4668 and No. 4712 were later set for trial on May 2, 1960. There is testimony that Scott stated prior to the trial date that "he was going to take a powder and leave the state" to "protect" his daughter. Neither Scott nor Summit appeared for either trial on May 2, 1960, and the court ordered the bonds in both cases forfeited. Case No. 4668 was continued for the term. The next day (May 3, 1960) Summit brought Scott before the court and several days later he pleaded guilty to indirect contempt of court in case No. 4712 and was sentenced to 7 months in the county jail.

On May 10, 1960, Summit filed motions in both cases (4668 and 4712) to set aside the bond forfeitures alleging Scott was not notified of the date of the trials and no subpoena was issued for him; that Summit exercised due diligence and brought Scott before the court in less than 24 hours after the orders of forfeiture were made; that the State was not prejudiced and was put to no expense. The motion in 4712

(indirect contempt) also alleged Scott's plea of guilty. The State's response was largely a statement of the above stated facts and a charge that Scott's absence was wilful and intentional.

The cases were consolidated for hearing and order on the motions. As reflected by the above statement the facts were mostly matters of record in the cases. The State introduced testimony as to Scott's expression and statements that he would not appear at the trials. The record does not show that Scott was present at the hearing on the motions. Summit did not introduce any testimony. At the conclusion of the hearing the lower court refused to set aside the forfeiture of the $750 material witness appearance bond given in No. 4668 but did set aside the forfeiture of the $2500 appearance bond given in No. 4712 wherein Scott was charged and later pleaded guilty to indirect contempt.

Each party appealed from that portion of the order by which it was adversely affected. Both parties urge the respective adverse ruling was an abuse of judicial discretion on the part of the lower court.

Inasmuch as there is some difference in the aspects or circumstances connected with the bonds we will give separate consideration to the appeals.

■ We will first consider the merits of the appeal of Summit from the lower court's order refusing to set aside the forfeiture of the $750 material witness bond given in case No. 4668. This bond is authorized under the provisions of 22 O.S. 1951 §§ 270 and 271. Section 270 authorizes the judge to take a bond, without surety, from a State's material witness to insure his appearance. Section 271 further empowers the judge when he is satisfied "that there is reason to believe that any such witness will not appear and testify, unless security be required" to order the material witness to furnish bond with sureties, for his appearance. Under such circumstances Summit must have known or at least was charged with knowing the belief

of the judge that Scott would not appear and testify. With such notice or knowledge Summit was in effect forewarned as to the required diligence it had assumed when it became surety on the bond.

In Manning v. State ex rel. Williams, 190 Okl. 65, 120 P.2d 980, we held that a surety on an appearance bond undertakes an absolute duty to produce the principal at the time set for hearing, and is bound to know when defendant's presence is required. See also Ramer v. State, ex rel. Ward, County Attorney, Okl., 302 P.2d 139. This same rule of law applies to a surety on a material witness bond.

■ Both appealing parties cite and rely upon 22 O.S.1951 § 1108, as being the statutory authority of the lower court to forfeit and to set aside the forfeiture of the bond under discussion. This statute deals with bail bonds furnished by a "defendant" in criminal cases. However, the provisions of such statute are applicable to recognizances furnished by, or on behalf of, material witnesses pursuant to a statute giving a judge authority to require such bond for appearance or be committed on refusal to comply therewith. 97 C.J.S. Witnesses § 32, pp. 419, 420.

Section 1108, supra, provides in part that "If, without sufficient excuse, the defendant neglects to appear according to the terms * * *" of the bond, the court shall declare the bond forfeited, and further that:

"* * * But, if at any time before the final adjournment of court the defendant or his bail appear and satisfactorily excuse his neglect, the court may direct the forfeiture to be discharged upon such terms as may be just. * * *"

Under this statute it is a prerequisite to consideration of a motion to vacate and certainly to an order setting aside a forfeiture of bail bond that the principal (Scott as a material witness) or his bail (Summit) appear and "satisfactorily excuse his neglect." Summit presented no

evidence of an excuse for failure of Scott to appear. All of the evidence is that Scott knew of the trial and intentionally failed to appear. His absence caused the criminal case against his daughter to be stricken from the trial docket. The administration of justice was impaired and delayed and his appearance the next day did not cure this.

In Edwards v. State, Okl., 321 P.2d 955, we stated:

"Under the provisions of 22 O.S. 1951 § 1108, a trial court may discharge a bail bond forfeiture and its judgment granting or refusing such discharge will not be disturbed on appeal unless it clearly appears that there has been an abuse of judicial discretion."

Under the circumstances here presented the lower court did not err in refusing to set aside the forfeiture of the $750 material witness appearance bond in case No. 4668.

■ We will next consider the merits of the appeal of the State from the order setting aside the forfeiture of the $2500 appearance bond given in case No. 4712 in which Scott was charged with indirect contempt.

Determination of this proposition involves the rules of law above stated, namely: the absolute duty of Summit to produce Scott on the trial date; the obligation of Scott or Summit to appear and satisfactorily excuse Scott's neglect; and the exercise of discretion by the lower court in passing on the showing made in support of the motion to vacate the forfeiture.

All of the evidence in the record is that Scott stated in Tulsa, Oklahoma, that he would not appear before the trial court on May 2, 1960, and would leave the State; that his daughter would do better without him; that she would go to the penitentiary if he testified against her. While these statements referred to his daughter's trial, still the intent expressed therein was applicable to his non-appearance at his own trial, set for the same day. If he had appeared at his own trial then he would have been available as a witness in his daughter's case. There is not a shred or scintilla of evidence in the record tending to satisfactorily excuse his neglect to appear. On the contrary all the evidence reflects a wilful intention not to appear at his trial.

Summit argues that it satisfactorily excused Scott's neglect to appear when it produced Scott the next day and that this act coupled with Scott's later plea of guilty and sentence and the monetary saving to the State, is sufficient to sustain the lower court's discretionary order setting aside the forfeiture. The argument overlooks the proven wilful intent of Scott to not appear and to evade his trial on the date the same was set. This court has on numerous occasions recognized the broad judicial discretion of lower courts to set aside appearance bond forfeitures, but no decision of this court has come to our attention in which we approved the vacation when there was present a wilful intent or design to avoid appearance.

In Mahaney v. State, 106 Okl. 152, 233 P. 725, 726; State v. Wright, 193 Okl. 383, 143 P.2d 801, 804, 805; Wilder v. State, Okl., 310 P.2d 765, 767; and Nicholson v. State, 132 Okl. 298, 270 P. 567, 568, we recognized the desirability of giving bail and the encouragement afforded vigilant and thrifty bondsmen. However, these cases base or condition our approval or direction of vacation of bond forfeitures, under the various circumstances presented in each case, upon the proposition that defendant's absence was without wilful intent or design. They also contain some proof of a tenable excuse for not appearing. Such is not the present case. In our opinion the record affirmatively shows without any controverting evidence that Scott wilfully and designedly failed to appear at his trial. His act was part and parcel of his scheme to avoid appearing and testifying at his daughter's trial.

We are constrained to hold that under the circumstances here presented the trial

court should have refused to set aside the forfeiture of the $2500 appearance bond in case No. 4712.

Affirmed as to case No. 4668 and reversed as to case No. 4712 with directions to reinstate the forfeiture of the appearance bond in that case.

WILLIAMS, C. J., and HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, V. C. J., and BERRY, J., concur in part and dissent in part.

WELCH, J., dissents.

BERRY, Justice (dissenting).

I concur in the majority opinion as to affirming the judgment in No. 4668 below ($750.00 bond) but I am unable to concur as to the reversal of the judgment in No. 4712 ($2500.00 bond) below without directing a new trial in the case.

Upon Roy L. Scott and Summit Fidelity and Surety Company's (hereafter referred to as "surety") motion to vacate the orders of forfeitures that were entered in the above referred-to case, the attorneys for the respective parties stipulated to the facts as shown by the record. This stipulation developed that (1) surety produced Scott in court on May 3, 1960, the day following the date upon which No. 4668 and No. 4712 were set for trial; that (2) on May 7, 1960, Scott pleaded guilty in No. 4712 and was sentenced to serve 7 months in jail; that (3) Scott immediately began serving the sentence.

Upon the above-mentioned matters being called to the trial court's attention, the court made known, as I read the record, that justification for vacating the forfeiture in No. 4712 had been shown. The court in fact stated that "in this case (No. 4712) it might not be necessary to put on testimony." As one would expect, surety, believing that it had prevailed in No. 4712, introduced no testimony.

In its brief surety makes this statement:

"On the morning of May 3, 1960, the defendant, Roy L. Scott, was brought before the court by his bondsmen, defendant herein, and offered as an excuse, that he, Roy L. Scott, had been left in Wichita, Kansas without a ride."

If the foregoing statement is true, the trial court personally knew of said fact. It is entirely possible that in consideration of said fact and the further fact that surety promptly produced Scott following the forfeiture and Scott promptly pleaded guilty in No. 4712 and began to serve his sentence, the trial court concluded that Scott and surety satisfied the provisions of 22 O.S.1951 § 1108 to the effect that a forfeiture may be vacated where "the defendant or his bail appear and satisfactorily excuse his neglect." If such are the facts, justification for reversing in No. 4712 would not exist.

The record, however, wholly fails to show that Scott or surety attempted at the hearing to vacate the forfeiture to excuse Scott's failure to appear for trial on May 2, 1960. Failure in this particular, in my opinion, can be attributed to the fact that Scott and surety may have made known to the trial court on May 3, 1960, Scott's excuse and the further fact that the trial court made known in No. 4712 that he considered that the agreed or stipulated facts showed justification for vacating the forfeiture in said case without the introduction of further evidence. In either event, surety was misled to his possible detriment and having been so misled failed to prove at the hearing on the motion to vacate the forfeiture, that Scott had a satisfactory excuse for failing to appear for trial on May 2nd. I would therefore reverse the judgment in No. 4712 and direct that a new trial in said case be granted.

For reasons stated, I respectfully dissent from the majority opinion reversing the judgment in No. 4712, without directing a new trial in the case.