**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**MINNESOTA TRUST COMPANY,**
**Defendant–Appellant.**

**No. 94–1290.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1995.

Decided July 3, 1995.

Warren F. Plunkett, Austin, MN, argued (Peter D. Plunkett, on the brief), for appellant.

Roylene A. Champeaux, Asst. U.S. Atty., Minneapolis, MN, argued (David L. Lillehaug, U.S. Atty., on the brief), for appellee.

Before BOWMAN, BEAM, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Minnesota Trust Company appeals the district court's[1] order granting summary judgment to the United States of America on the United States' complaint seeking judgment on the breach of an immigration bond issued by Minnesota Trust's bonding agent. Minnesota Trust argues that it is not liable on the immigration bond because the bonding agent had no authority to issue the immigration bond and because Minnesota Trust did not receive notice to produce the alien or notice of the alleged breach of the immigration bond in time to protect its rights in administrative proceedings. We affirm.

## I.

The facts are not disputed. On April 9, 1982, the President of Minnesota Trust Company executed a power of attorney authorizing Ray Chisholm Bonding Service to act as attorney-in-fact for Minnesota Trust. On the same day, using the power of attorney, Ray Chisholm Bonding issued a $2,000 immigration bond, with Minnesota Trust as surety, to secure the appearance of an alien, Anthony Idowu Adejugbe. Ray Chisholm Bonding was designated as the obligor of the bond. The bond indicated that all necessary notices would be mailed to Ray Chisholm Bonding at the address listed on the bond. Later in 1982, Ray Chisholm Bonding went out of business.

On February 22, 1990, the United States Department of Justice, Immigration and Naturalization Service (INS), sent a notice to Ray Chisholm Bonding directing it to surrender Anthony Idowu Adejugbe on March 7, 1990, in St. Paul, Minnesota, for an interview. The INS sent the notice by certified mail return receipt requested. The envelope containing the notice came back to the INS unclaimed. On March 7, 1990, the INS District Director declared the immigration bond breached after Adejugbe did not appear for the interview. On March 13, 1990, the INS sent a notice of the breach and a demand for payment to Ray Chisholm Bonding by certified mail return receipt requested at the address provided on the bond. Again, the envelope containing the notice was returned to the INS unclaimed. The INS sent notice of the breach and demand for payment to Minnesota Trust on May 7, 1990, after the

---

1. The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

time for an administrative appeal within INS of the INS's declaration of the breach of the bond had run.

In July 1992, Minnesota Trust notified the INS that Minnesota Trust had located Adejugbe and offered to return him to the custody of the INS in Washington, D.C. The INS responded that information about Adejugbe's whereabouts would be helpful, but it would not cure Minnesota Trust's liability on the bond. Minnesota Trust did not surrender Adejugbe to the INS.

In December 1992, the United States filed an action in the United States District Court for the District of Minnesota seeking recovery of the $2,000 bond, plus interest and costs. The United States and Minnesota Trust filed cross-motions for summary judgment. The district court denied Minnesota Trust's motion, granted the United States' motion, and entered judgment for the United States. Minnesota Trust appeals.

## II.

■ Minnesota Trust first argues that the bond at issue in this case is void on its face because the power of attorney Minnesota Trust executed with Ray Chisholm Bonding did not authorize Ray Chisholm Bonding to bind Minnesota Trust as surety on immigration bonds. The relevant language of the power of attorney states:

> The obligation of the company [Minnesota Trust] may be executed for recognizance on bail bonds only and the Attorney–In–Fact is limited to appearance bonds, and cannot be construed to guarantee for failure to provide payments, back alimony payments, fines, or wage law claims on behalf of ... the defendant.

(Appellant's App. at 6.) Minnesota Trust argues that the power of attorney authorized Ray Chisholm Bonding only to write bail bonds, which Minnesota Trust asserts are substantially different than immigration bonds. Thus, Minnesota Trust argues that the immigration bond was void on its face and cannot be enforced. We disagree.

■ Ray Chisholm Bonding issued an immigration delivery bond to secure the subsequent appearance of Adejugbe upon request of the INS. In our view, immigration delivery bonds do not differ in any significant way from bail bonds. *Stuyvesant Ins. Co. v. District Dir., I.N.S.*, 407 F.Supp. 1200, 1202 (N.D.Ill.1975). Both immigration delivery bonds and traditional bail bonds function to guarantee the appearance of a party at a later proceeding. *See id.* In essence, an immigration delivery bond functions as a "bail bond" for immigration proceedings.[2] Immigration cases implicitly recognize this fact by specifically noting that the INS should evaluate the alien's "bail" risk when determining whether an alien is required to post an immigration bond, and if so, in what amount. *See Reno v. Flores,* —— U.S. ——, ——, 113 S.Ct. 1439, 1443, 123 L.Ed.2d 1 (1993) (quoting *Matter of Patel,* 15 I. & N. Dec. 666 (1976)) (" 'an alien generally ... should not be detained or required to post bond except on a finding that he is a threat to the national security ... or that he is a poor bail risk' "). Thus, we conclude that an immigration delivery bond functions as a "bail bond" for immigration deportation cases and, therefore, Ray Chisholm Bonding did not exceed its power of attorney authority when it issued the immigration delivery bond in this case.

## III.

■ Minnesota Trust next argues that it did not receive proper notice from the INS to surrender Adejugbe, or proper notice of the subsequent declaration by the INS that the bond agreement had been breached. Minnesota Trust asserts that the INS should have given notice to Minnesota Trust directly instead of to Ray Chisholm Bonding because the INS knew Ray Chisholm Bonding had gone out of business long before the INS sent those notices to Ray Chisholm Bonding. Minnesota Trust contends that if it had received proper notice it would have had the

---

2. A bail bond is defined as a "three-party contract which involves state, accused and surety and under which surety guarantees state that accused will appear at subsequent proceedings."

*Black's Law Dictionary* 140 (6th ed. 1990). The immigration delivery bond issued by Ray Chisholm Bonding in this case fully satisfies this definition.

opportunity to produce the alien in time for the interview and prevent a default or, at a minimum, it would have been able to file a timely administrative appeal from the declaration of breach. The United States argues that all notices it sent to Ray Chisholm Bonding and Minnesota Trust were sufficient under the law because the notices complied with the bond's notice-by-mail terms and all applicable INS regulations. The United States asserts that the INS District Director did not have notice that Ray Chisholm Bonding had gone out of business and that Minnesota Trust bore the responsibility for informing the District Director's office that it should send notices to Minnesota Trust.

■ An immigration delivery bond is essentially "a contract between the Service [INS], the bonding agent and attorney-in-fact, and the surety company." *Matter of Allied Fidelity Ins. Co. In Bond Breach Proceedings,* 19 I. & N. Dec. 124 (1984). Under the power of attorney, Ray Chisholm Bonding, as the bonding agent and Minnesota Trust's attorney-in-fact, issued an immigration bond for Adejugbe, with Minnesota Trust as a surety. As indicated, Ray Chisholm Bonding listed itself as the primary obligor on the bond.

■ Normally, a creditor, like the INS here, is not required to provide notice to the surety of the principal's default, unless the contract requires such notice. *See Continental Bank & Trust Co. v. American Bonding Co.* 605 F.2d 1049, 1057 n. 17 (8th Cir.1979) ("In the absence of a provision in the bond agreements requiring notice to the surety upon the principal's default, the surety is not discharged by the obligee's failure to communicate such notice") (citing *Restatement of Security* § 136 (1941)); *see also Fireman's Fund Ins. Co. v. United States,* 909 F.2d 495, 498–99 (Fed.Cir.1990) ("the government as

obligee owes no equitable duty to a surety . . . unless the surety notifies the government that the principal has defaulted under the bond"); *United States v. Craft,* 763 F.2d 402, 404 (11th Cir.1985) (surety on appearance bond generally not entitled to notice of principal's required performance). The Commentary to *Restatement of Security* § 136 explains the rationale of this rule as follows:

> a. *Rationale.* The rule stated in this Section is an application of the usual rule of contracts that an obligor is not discharged because he is not notified that the time for his performance is due, unless he has stipulated for notification. The surety, when he undertakes his obligation, must realize that there is a risk that the principal will not perform. If the surety wishes notification, he can insert a requirement for it in his contract. If he does not stipulate for notification, *the surety has the burden of* ascertaining when, if ever, his performance is due, and of *taking whatever steps seem appropriate to him for his own protection.*

(emphasis added). Here, the immigration bond agreement did not require notice to the surety, Minnesota Trust, and indicated only that the INS would give any required notices to the obligor, Ray Chisholm Bonding.[3] (*See* Appellant's App. at 7.) For its part, Minnesota Trust never notified the INS that notices should be sent to Minnesota Trust, nor did Minnesota Trust take any other steps to protect itself, even though Minnesota Trust knew in 1982 that Ray Chisholm Bonding had gone out of business and, more importantly, that Ray Chisholm Bonding had written more than one immigration bond on which Minnesota Trust had to make good. Minnesota Trust claims that Ray Chisholm Bonding's defaults cost it $180,000 overall.

---

**3.** The immigration bond agreement contemplated notices to the obligor, Ray Chisholm Bonding, for delivery of the alien on every request made by the INS (*See* Appellant's App. at 10.) The INS regulations provide for notice to the named obligor only after a determination of default on the bond. 8 C.F.R. § 103.6(e). There is no dispute that the INS complied with the service regulations for these notices by serving them by certified mail return receipt requested. *See, e.g.,* 8

C.F.R. § 103.5a(c) (personal service required when service initiates proceeding with proposed adverse effect); 8 C.F.R. § 103.5a(a)(2)(iv) (personal service can be accomplished by certified mail return receipt requested). The fact that the notices were returned unclaimed is not controlling. *In re Adolfo Jose Grijalva,* No. A28 812 710, Interim Dec. 3246, 1995 BIA LEXIS 12 (Bd.Immig.App., Apr. 28, 1995).

Minnesota Trust points out that the INS's Regional Counsel was informed in 1982, by Ray Chisholm Bonding's lawyer while in the process of dealing with the cases of two other aliens, that Ray Chisholm Bonding had gone out of business. Minnesota Trust argues that the INS thus had actual notice that Ray Chisholm Bonding was no longer in business and consequently should have sent the notices in this case directly to Minnesota Trust. The district court adopted the argument of the United States that any notice in 1982 to the Regional Counsel that Ray Chisholm Bonding was out of business did not serve as notice to the District Director who was responsible for this case.

We need not decide whether notice to the INS Regional Counsel in other cases should be imputed to the INS District Director responsible for the alien and the bond agreement in this case. While we tend to agree with Minnesota Trust that the INS District Director should be deemed to have had such constructive notice,[4] that would not excuse Minnesota Trust's liability for the breach of the bond agreement here because Minnesota Trust failed in its burden as the surety, as stated in *Restatement of Security* § 136 cmt. a, to take the necessary steps for its own protection. *See Fireman's Fund,* 909 F.2d at 499 (fact that government had been informed by other parties that the principal obligor failed to perform "does not substitute for notice by the surety and does not trigger the government's equitable duty to act with reasoned discretion toward it"). The burden falls heavily on the surety because "[b]y definition and agreement the surety protects the government's interest, not the other way around." *Id.* Moreover, the fact remains that the surety is in the best position to monitor its principal and thus to protect its own interests. *Id.* (surety knows best when

its interests are affected and "consequently, only notice by the surety triggers the government's equitable duty" to provide the surety with notice). Thus, we conclude there was no deficiency of notice that could serve to excuse Minnesota Trust's required performance.

Our holding in this case, however, should in no way be viewed as condoning the INS's performance in this case—which can only be viewed as bordering on bureaucratic sandbagging. In our view, this unfortunate situation which has now devolved into a finger-pointing competition, could readily have been prevented by either party, each of whom had some notice that Ray Chisholm Bonding was out of the picture. While the burden under the law falls on Minnesota Trust, it is clear to us that the INS Regional Counsel, by exercising some nominal initiative, could have easily notified the District Director to add Minnesota Trust as an additional party to whom notices should be sent on immigration delivery bonds where Ray Chisholm Bonding was the obligor.

## IV.

For the reasons stated above, the judgment of the district court is affirmed.

---

4. While notice to one government office does not necessarily constitute notice to another, even if the offices are within the same agency, *see United States v. Hamilton,* 730 F.Supp. 1272, 1277 (S.D.N.Y.1990) (notice to U.S. Attorney not always notice to INS even though both entities are within the Department of Justice), in this case INS Regional *Counsel* had notice that Ray Chisholm Bonding was out of business. In our view, Regional Counsel for an agency serves as the lead attorney for all of the district offices in the region. The record in this case reflects that the

Regional Counsel's office and the District Director's office regularly share information on cases. Thus, we have no trouble imposing a higher duty on Regional Counsel to report such facts to other district offices, especially to the district office where the bankrupt business was located. This is simply not a case where an office clerk who has no responsibility for matters outside of that particular office acquires information that may or may not be relevant in other cases.