# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3883

———————

Edgar Jose Rodriguez-Cuate,

Petitioner,

v.

Alberto Gonzales, United States
Attorney General,[1]

Respondent.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

On Petition for Review of
the Decision of the Board
of Immigration Appeals.

———————

Submitted: November 18, 2005
Filed: February 24, 2006

———————

Before MURPHY, BOWMAN, and GRUENDER, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Edgar Jose Rodriguez-Cuate, a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming without opinion the Immigration Judge's ("IJ") denial of Rodriguez-Cuate's motion to reopen his in absentia deportation proceedings. For the reasons stated below, we deny the petition for review.

———————

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Alberto Gonzales is automatically substituted for his predecessor, John Ashcroft, as respondent.

Rodriguez-Cuate entered the United States without inspection in June 1991 near San Ysidro, California. On October 28, 1994, Immigration and Naturalization Service ("INS") officials personally served Rodriguez-Cuate with an Order to Show Cause ("OSC"), alleging that he was subject to deportation for having entered the country without inspection, in violation of 8 U.S.C. § 1251(a)(1)(B) (1994).[2] The OSC stated in both English and Spanish that Rodriguez-Cuate was responsible for (1) providing immigration officials with an address to which all official correspondence could be delivered to him and (2) updating this information as needed. The INS officials also explained these requirements to Rodriguez-Cuate verbally in Spanish, and Rodriguez-Cuate signed the OSC to confirm that he understood the requirements. The OSC further informed Rodriguez-Cuate that a hearing would be scheduled to determine his immigration status and that notice of the hearing would be mailed to the address he provided. Rodriguez-Cuate identified his address as "2819 Pillsbury Avenue, #103, Minneapolis, Minnesota 55411." Admin. Rec. at 46.

On May 20, 1995, immigration officials sent a Notice of Hearing ("NOH") to Rodriguez-Cuate, instructing him to appear for a master calendar hearing on October 3, 1995. Officials sent the NOH by certified mail to the Pillsbury address provided by Rodriguez-Cuate, but the NOH was returned to immigration officials by the postal service marked, "ATTEMPTED–NOT KNOWN." Id. at 48. Rodriguez-Cuate did not appear at the hearing. After reviewing the evidence submitted by the

---

[2]Deportation proceedings commenced before April 1, 1997, and concluded after October 30, 1996, are governed by the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). See IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009–546, 3009–625 (Sept. 30, 1996); Fisher v. INS, 291 F.3d 491, 496 (8th Cir. 2002). Because Rodriguez-Cuate was placed in proceedings on October 28, 1994, and the BIA issued the final order in this case on October 25, 2004, the transitional rules apply. All references to the United States Code are to the 1994 version unless otherwise noted.

INS at the hearing, the IJ ordered Rodriguez-Cuate deported in absentia. The IJ sent Rodriguez-Cuate a copy of the deportation order by certified mail to the Pillsbury address, but that order was also returned, "ATTEMPTED–NOT KNOWN." Id. at 49.

In July 2000, Rodriguez-Cuate married a United States citizen and, in March 2001, filed an application for permanent residence with the United States Bureau of Citizenship and Immigration Services. Rodriguez-Cuate claims that he first learned about the in absentia deportation order during this application process.

On January 16, 2004, Rodriguez-Cuate filed a Motion to Reopen to Rescind the deportation order, claiming that although he resided at the Pillsbury address at all relevant times, he never received the NOH. After finding that the NOH was properly sent by certified mail to the Pillsbury address provided by Rodriguez-Cuate, the IJ denied the motion, and the BIA affirmed without opinion. Rodriguez-Cuate appeals, arguing that the BIA erred in refusing to reopen the deportation proceedings.

"Motions for reopening of immigration proceedings are disfavored" because "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323 (1992). Accordingly, we review the denial of a motion to reopen deportation proceedings for abuse of discretion. See Nativi-Gomez v. Ashcroft, 344 F.3d 805, 807 (8th Cir. 2003). Where, as here, the BIA affirms the IJ's decision without opinion, "we review the IJ's decision directly." Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005).

An alien may file a motion to reopen his immigration proceedings in order to rescind an in absentia deportation order at any time if the alien demonstrates that he did not receive proper notice of the proceedings. 8 U.S.C. § 1252b(c)(3)(B). Before the enactment of IIRIRA, immigration officials were required to give an alien written notice of the proceedings in person or by certified mail. 8 U.S.C. § 1252b(a)(1) ("In

deportation proceedings . . . written notice . . . shall be given in person to the alien (or, if personal service is not practicable, such notice shall be given by certified mail to the alien or to the alien's counsel of record, if any)."). Written notice of deportation proceedings sent to an alien's last known address by certified mail is sufficient under the statute; there is no requirement that the certified mail receipt be signed by the alien or by a responsible person at the alien's address in order to effect service. See In re Grijalva, 21 I. & N. Dec. 27, 33 (BIA 1995); United States v. Minnesota Trust Co., 59 F.3d 87, 90 n.3 (8th Cir. 1995) (citing Grijalva for the proposition that an unclaimed certified mail notice does not defeat the presumption of proper service). Moreover, when written "notice of a deportation proceeding is sent by certified mail through the United States Postal Service and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises." Grijalva, 21 I. & N. Dec. at 37; see Ghounem v. Ashcroft, 378 F.3d 740, 744 (8th Cir. 2004) (acknowledging strong presumption of delivery for certified mail as described in Grijalva, but rejecting such presumption for regular mail). The strong presumption of effective service for certified mail may be overcome, however, by "substantial and probative evidence" of "nondelivery or improper delivery by the Postal Service." Grijalva, 21 I. & N. Dec. at 37. An alien's "bald and unsupported denial of receipt . . . is not sufficient to support a motion to reopen to rescind an in absentia order." Id.

Rodriguez-Cuate contends that he provided substantial and probative evidence to overcome this strong presumption of effective service. In support of his contention, Rodriguez-Cuate points to an affidavit that was signed by two of his relatives on March 13, 2004, asserting that Rodriguez-Cuate "did not at anytime receive mail from the Executive Office for Immigration Review nor the Immigration Service." Admin. Rec. at 26. Rodriguez-Cuate did not include this affidavit in the Motion to Reopen to Rescind he filed with the IJ. In fact, the IJ denied Rodriguez-Cuate's motion eleven days before the affidavit was even signed. As a result, the IJ was never given the opportunity to consider this evidence even though Rodriguez-

Cuate presumably could have obtained the affidavit in time to submit it with his motion. Instead, Rodriguez-Cuate first submitted the affidavit in the appeal he filed with the BIA challenging the IJ's denial of his motion.

As a general rule, the BIA is not obligated to consider evidence first offered by an alien on appeal from an IJ's determination if the evidence "was available and could have been presented at an earlier hearing."[3] Grijalva 21 I. & N. Dec. at 36; see Strato v. Ashcroft, 388 F.3d 651, 655 (8th Cir. 2004) (noting that the BIA may deny a motion to reopen if the alien attempts to introduce evidence that was previously available but not submitted); In re Fedorenko, 19 I. & N. Dec. 57, 74 (BIA 1984) (observing that BIA's function is to review the record, not create it, and stating "that all evidence which is pertinent to determinations made during deportation proceedings . . . must be adduced in the hearing before the immigration judge"). Likewise, the scope of our review is limited and a petition for review "shall be determined solely upon the administrative record upon which the deportation order is based." 8 U.S.C. § 1105a(a)(4); see Berte v. Ashcroft, 396 F.3d 993, 997 (8th Cir. 2005) (acknowledging identical limitation on judicial review in 8 U.S.C. § 1252(b)(4)(A) (2000)); Grass v. Gonzales, 418 F.3d 876, 879 (8th Cir. 2005) (refusing to remand for consideration of new grounds for relief from removal because "judicial review is limited to the administrative record") (citation omitted). Given the

_____

[3]In Grijalva, the BIA deviated from its requirement that "evidence necessary to support the motion to reopen . . . be presented to the Immigration Judge." 21 I. & N. Dec. 27 at 37. It did so because it was describing for the first time what evidence was required to rebut the presumption of delivery, remanding only to allow the alien an opportunity to present the required evidence to the IJ. Id.; see also Arrieta v. INS, 117 F.3d 429, 432 (9th Cir. 1997) (noting that Grijalva had not been decided at the time the alien submitted a motion to reopen to the IJ and remanding for the IJ to consider personal affidavits as evidence of nondelivery of hearing notice). Unlike the aliens in Grijalva and Arrieta, Rodriguez-Cuate was, or should have been, aware of his evidentiary burden when he filed his Motion to Reopen to Rescind with the IJ.

limited scope of our review, we decline to consider in the first instance evidence that Rodriguez-Cuate did not present to the IJ.

Because Rodriguez-Cuate failed to submit to the IJ substantial and probative evidence to rebut the strong presumption that notice of his deportation proceedings was properly served, the IJ and the BIA did not err in finding that Rodriguez-Cuate received the notice. Based on the administrative record before us, we conclude that neither the IJ nor the BIA abused its discretion in refusing to reopen Rodriguez-Cuate's deportation proceedings to rescind the in absentia deportation order.

Rodriguez-Cuate also argues that the IJ should have granted his motion to reopen because he was eligible for relief from deportation based on his July 2000 marriage to a United States citizen. We decline to consider this issue, however, because Rodriguez-Cuate has filed a separate motion to reopen his application for permanent residence with the Bureau of Citizenship and Immigration Services ("BCIS"), and he failed to properly raise this issue for the IJ's consideration. See Etchu-Njang v. Gonzales, 403 F.3d 577, 582 (8th Cir. 2005) (noting that 8 U.S.C. § 1105a(c) requires an alien to exhaust both administrative remedies and issues before judicial review and citing cases in support); Halabi v. Ashcroft, 316 F.3d 807, 808 (8th Cir. 2003) (per curiam) (declining to address alien's unexhausted arguments relating to recent marriage and its effect on his immigration status). In his Motion to Reopen to Rescind, Rodriguez-Cuate informed the IJ that a "motion to reopen ha[d] been filed with the [BCIS]" to consider his application for permanent residence.[4] Admin. Rec. at 43. Consequently, in the order denying Rodriguez-Cuate's motion, the IJ recognized that the issue of Rodriguez-Cuate's "Application for Permanent Residence (Form I-485) . . . is not for this Court's determination. It appears that

_____

[4]On May 21, 2003, the BCIS sent Rodriguez-Cuate notice that his application for permanent residence was "denied for lack of prosecution" after Rodriguez-Cuate and his wife failed to appear together for their third scheduled interview. Admin. Rec. at 55.

[Rodriguez-Cuate] is pursuing reopening of [that] application[] with U.S. Citizenship and Immigration Services." Id. at 35. Because there is no evidence in the record that Rodriguez-Cuate has exhausted his administrative remedies with respect to this issue, or that he properly raised it for the IJ's resolution, we decline to consider it in the first instance. See Etchu-Njang, 403 F.3d at 583 (recognizing that "the doctrine of issue exhaustion serves the salutary purpose of giving the agency an opportunity to address the disputed issue in the first instance"); Feleke v. INS, 118 F.3d 594, 600 (8th Cir. 1997) (explaining that we are without jurisdiction to review eligibility for suspension of deportation when there has been no action by the BIA on the issue).

In a related argument, Rodriguez-Cuate asserts that the pre-IIRIRA five-year limitation on discretionary relief for failure to appear at a deportation proceeding should apply in his case rather than the post-IIRIRA ten-year limitation. Compare 8 U.S.C. § 1252b(e)(1) (five years) with 8 U.S.C. § 1229a(b)(7) (2000) (ten years). Although it is far from clear, Rodriguez-Cuate appears to argue that if the IJ's in absentia deportation order stands, he should be eligible for discretionary relief under the pre-IIRIRA, five-year limitation. As noted above, however, Rodriguez-Cuate has not exhausted his administrative remedies with respect to his application for permanent residence, and there is nothing in the record to indicate that the IJ or the BIA applied either of the limitation-on-relief provisions in Rodriguez-Cuate's proceedings. Therefore, we decline to consider this argument.

Finally, Rodriguez-Cuate cites the BIA's decision in In re M–S–, 22 I. & N. Dec. 349 (BIA 1998), in support of the argument that his deportation proceedings should be reopened to consider his application for permanent residence. Contrary to Rodriguez-Cuate's characterization, in M–S– the in absentia deportation proceedings were reopened because the alien was not properly warned of the consequences of failing to appear for a scheduled deportation hearing, not because the alien subsequently became eligible for discretionary relief from deportation. Rodriguez-Cuate concedes that when immigration officials served him with the OSC, he was

warned verbally and in writing of the consequences should he fail to appear at his deportation proceedings.  Therefore, M–S– provides no support for Rodriguez-Cuate's arguments.

For the foregoing reasons, we conclude that neither the IJ nor the BIA abused its discretion in refusing to reopen Rodriguez-Cuate's in absentia deportation proceedings.  Accordingly, we deny Rodriguez-Cuate's petition for review.

_____