STATE of Minnesota, Respondent,

v.

Johnny Ray RODRIGUEZ, a/k/a Misael Bautista–Castro, a/k/a Guadalupe Montalvo, Defendant,

Howe Bonding, et al., Appellants.

No. A09–395.

Court of Appeals of Minnesota.

Dec. 15, 2009.

Kristen Nelsen, Mower County Attorney, Jeremy Clinefelter, Assistant County Attorney, Austin, MN, for respondent.

Frank Arend Schulte, St. Paul, MN, for appellants.

Considered and decided by SHUMAKER, Presiding Judge; WORKE, Judge; and CONNOLLY, Judge.

## OPINION

SHUMAKER, Judge.

On appeal from the district court's denial of appellants' motion to reinstate and discharge a bail bond, appellants argue that the bail bond was an unenforceable contract because of a mutual mistake of fact regarding the defendant's identity. Alternatively, appellants contend that they were entitled to reinstatement and discharge of the bond. We disagree with both arguments, and affirm.

## FACTS

On April 13, 2008, police arrested an individual who identified himself as "Johnny Ray Rodriguez." A complaint was filed against "Johnny Ray Rodriguez," but on April 14, the defendant revealed to a bond-study agent and the police that his real name was Misael Bautista–Castro. The defendant also informed police that he had previously used the alias Guadalupe Montalvo. The district court made a record of the defendant's aliases at his first appearance on April 15, 2008, and established that his true name was Misael Bautista–Castro. The court then set bail at $50,000.

Appellant Howe Bonding is an agent of appellant Minnesota Surety and Trust Company (Minnesota Surety). A bond agent from Howe Bonding was present in court on the day that the defendant's true name and aliases were placed on the record. The following day, April 16, 2008, the bond agent agreed to post the $50,000 bond on behalf of the defendant so as to obtain his release from jail.

The defendant failed to appear for his trial on August 11, 2008, and the district court issued a bench warrant for his arrest and forfeited the bond. At some point thereafter, agents of Howe Bonding attempted to locate the defendant in Plainview, Texas, and in late September or early October of 2008 discovered that the "real" Johnny Ray Rodriguez was not the defendant for whom the bond had been issued.

In February of 2009, Howe Bonding and Minnesota Surety moved for reinstatement and discharge of the bond, principally arguing that the bond was a contract that should be avoided entirely because the parties were mutually mistaken about the defendant's true identity, or, alternatively, claiming that the bond should be reinstated and discharged because of efforts to locate the defendant. The district court agreed that the bond was a contract, but concluded that there had been no mutual mistake of fact when the contract was formed. It also denied the motion for reinstatement and discharge of the bond. Howe Bonding and Minnesota Surety appealed.

## ISSUES

1. Is a bail bond a contract?

2. Does the evidence support the district court's determination that the bond contract could not be avoided on the ground of mutual mistake?

3. Did the district court abuse its discretion by denying reinstatement and discharge of the bond?

## ANALYSIS

### I.

The threshold question for our review is whether a bail bond is a contract governed by traditional principles of contract law. The district court decided the question in the affirmative, and we agree.

■ "The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn.App. 2006) (citing *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983)). Suretyships or surety contracts are characterized by the relationship among three parties: (1) the surety, "who is bound on an obligation from which [the principal], by the discharge of a duty, should relieve him"; (2) the principal, who "in the solution of the rights and duties of the parties, should bear the ultimate burden unless excused for some reason personal to himself"; and (3) the creditor, "to whom the surety is bound and to whom the principal is under an obligation or other duty." Restatement (First) of Security, § 82 cmts. b, c, d (1941); *see also Hartford Accident & Indem. Co. v. Dahl*, 202 Minn. 410, 278 N.W. 591 (1938) (discussing nature of bonds as surety contracts).

■ Applying these principles, the district court concluded that a bail bond is a contract because there is an exchange of promises and consideration among the surety (the bonding company), the principal (the defendant) and the creditor (the court). The district court described the nature of the bond contract succinctly:

In effect, the [bond] contract is a three cornered agreement. The State grants

to the bonding company the right to provide surety for appearance of defendants, and quasi-police powers to secure their custody in the event of non-appearance, and to the defendant release from custody upon posting of bond. The Defendant agrees to appear before the Court and to pay the bonding company a fee to issue an appearance bond. The surety/bonding company receives a premium and promises to the Court that the defendant will appear, or that the face amount of the bond will be paid.

The district court's characterization is supported by precedent. While it does not appear that any Minnesota case has expressly held that a bail bond is a contract subject to traditional principles of contract law, at least one case has described a bail bond as a "contract between [a] surety and [a] principal." *State v. Tapia*, 468 N.W.2d 342, 343 (Minn.App.1991) (discussing *Taylor v. Taintor*, 83 U.S. 366, 371, 16 Wall. 366, 21 L.Ed. 287 (1872), which described the bail relationship in terms of a surety "principal" (the defendant) being released into the "custody of his sureties" (the bonding agent)), *review denied* (Minn. May 23, 1991). Additionally, the Eighth Circuit Court of Appeals has defined a bail bond as a " 'three-party contract which involves state, accused and surety and under which surety guarantees state that accused will appear at subsequent proceedings.' " *U.S. v. Minn. Trust Co.*, 59 F.3d 87, 89 n. 2 (8th Cir.1995) (quoting *Black's Law Dictionary* 140 (6th ed. 1990)); *see also La Grotta v. U.S.*, 77 F.2d 673, 678 (8th Cir.1935) ("A bail bond is a contract between the government, on the one side, and the principal and surety on the other. Like other contracts, it must be construed according to its express terms.") (citations omitted).

Given this precedent and the fact that a bail bond so clearly fits the definition of a surety contract, we uphold the district court's conclusion that a bail bond constitutes a surety contract.

## II.

■ Howe Bonding and Minnesota Surety's primary contention in the district court and on appeal is that the bond contract should be considered void *ab initio* because the parties were operating under a "mutual mistake of fact" as to the defendant's true identity. The district court concluded that Howe Bonding and Minnesota Surety's assertion of mutual mistake "ignores the plain facts." The district court's determination regarding the existence of a mutual mistake will not be disturbed on review unless it is "manifestly contrary to the evidence." *Golden Valley Shopping Ctr., Inc. v. Super Value Realty, Inc.*, 256 Minn. 324, 329, 98 N.W.2d 55, 58 (1959). Because there is no evidence that any party besides Howe Bonding was mistaken at the time the bail bond was created, we uphold the district court's conclusion that no mutual mistake occurred.

■ Essentially, Howe Bonding and Minnesota Surety maintain that because the complaint and other court documents named the defendant as "Johnny Ray Rodriguez," the parties to the bond contract were "mutually mistaken" about the defendant's identity.

> Where a mistake of both parties *at the time a contract was made* as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake.

Restatement (Second) of Contracts § 152(1) (1981) (emphasis added), *quoted in Winter v. Skoglund*, 404 N.W.2d 786, 793 (Minn.1987).

The facts do not support the proposition that a "mutual" mistake occurred at the time the bond was executed on April 16, 2008. At the defendant's first appearance on April 15, 2008, the district court made a record of the defendant's true name, "Misael Bautista–Castro," and made it clear that, in addition to Johnny Ray Rodriguez, the defendant used another alias, "Guadalupe Montalvo." Howe Bonding admits that its agent was present at this hearing, but claims it nevertheless relied on court documents as to the defendant's identity. The state became aware of the defendant's aliases at the first appearance, as did the district court. Thus, on April 15, both the court and the state knew the defendant's true identity. By its nature, a *mutual* mistake of fact requires more than one party to the contract to be mistaken about some material fact. Because neither the court, the state, nor the defendant was mistaken at the time the bond contract was entered on April 16, 2008, there can be no "mutual" mistake.

"Absent ambiguity, fraud, or misrepresentation, a mistake of one of the parties alone as to the subject matter of the contract is no ground for rescission." *N. Star Ctr., Inc. v. Sibley Bowl, Inc.*, 295 Minn. 424, 426, 205 N.W.2d 331, 332 (1973); *see also Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn.1980) (stating that a unilateral mistake does not warrant rescission of a contract absent "fraud or inequitable conduct by the other party"). Howe Bonding and Minnesota Surety do not argue that the contract was ambiguous or that there was fraud or misrepresentation, or inequitable conduct on the part of the court or the state. Thus, Howe's unilateral mistake cannot be a basis for avoiding its contract.

The district court's determination is affirmed.

## III.

Howe Bonding and Minnesota Surety alternatively ask us to reverse the district court's determination that the bond would not be reinstated and discharged. The district court has broad discretion in deciding whether to reinstate and discharge a forfeited bail bond, and we will not reverse its decision absent an abuse of that discretion. *Shetsky v. Hennepin County*, 239 Minn. 463, 471, 60 N.W.2d 40, 46 (1953); *see also* Minn.Stat. § 629.59 (2006) (providing that a district court "may" forgive or reduce the penalty according to the circumstances of the case and the situation of the party "on any terms and conditions it considers just and reasonable"). A district court abuses its discretion when its ruling is based on an erroneous view of the law. *Almor Corp. v. County of Hennepin*, 566 N.W.2d 696, 701 (Minn.1997). The party seeking reinstatement and discharge of a bail bond has the burden of proving that mitigating factors entitle it to reinstatement. *Shetsky*, 239 Minn. at 472, 60 N.W.2d at 46.

In determining whether the district court abused its discretion in denying a motion to reinstate a forfeited bond, a reviewing court considers the so-called *Shetsky* factors:

(1) the purpose of bail, the civil nature of the proceedings, and the cause, purpose, and length of the defendant's absence; (2) "the good faith of the surety as measured by the fault or willfulness of the defendant"; (3) "the good-faith efforts of the surety-if any-to apprehend and produce the defendant"; and (4) any prejudice to the state in its administration of justice.

*State v. Storkamp*, 656 N.W.2d 539, 542 (Minn.2003) (quoting *Shetsky*, 239 Minn. at 471, 60 N.W.2d at 46).

■ As the district court noted in its order, Howe Bonding and Minnesota Surety did not "argue that the bond should be forfeited based on the *Shetsky* factors; rather, [they argue] that in reality courts do not make sureties forfeit the bond and this Court should not because they substantially complied with Minnesota General Rules of Practice 702." On appeal, Howe Bonding and Minnesota Surety more or less argue that the good-faith efforts to locate the "real" Johnny Ray Rodriguez entitle them to reinstatement and discharge of the bond. We disagree.

a. Purpose of bail and civil nature of the proceedings.

■ "The primary purpose of bail ... [is] to insure the prompt and orderly administration of justice without unduly denying liberty to the accused whose guilt has not been proved." *Shetsky*, 239 Minn. at 471, 60 N.W.2d at 46. Bail is also "intended to encourage sureties to voluntarily pay the penalty for failing to ensure the presence of the accused without requiring that the state undergo the expense of litigation to recover the defaulted bond amount." *Storkamp*, 656 N.W.2d at 542 (citing *Shetsky*, 239 Minn. at 469, 60 N.W.2d at 45).

> By accepting a premium and agreeing to act as surety, [the bonding company] undertook to ensure [the defendant] would personally appear to answer the charge against him. As such, [the bonding company] cannot absolve itself of blame when it did not monitor [the defendant's] appearances and thus failed to timely learn of his nonappearance.

*State v. Due*, 427 N.W.2d 276, 278 (Minn. App.1988) (citation omitted), *review denied* (Minn. Sept. 28, 1988).

Howe Bonding apparently made no effort to verify or to confirm the defendant's true identity before executing the bond contract. The information as to both the defendant's true name and his aliases was accessible to the public and Howe Bonding, but the company chose to rely solely on the defendant's "booking sheet" and his word. The booking sheet listed the defendant's birthplace as Mexico City and social security number as "unknown." Additionally, the bonding agent testified that, after interviewing the defendant, "everything pointed to Plainview, Texas." The only measure that Howe Bonding took to keep track of the defendant was to occasionally contact a corrections agent whom the defendant was supposed to check in with.

b. Cause, purpose and length of defendant's absence.

■ A "[d]efendant's willfulness or bad faith is attributable to the surety" and weighs against forgiveness of a bond penalty. *State v. Vang*, 763 N.W.2d 354, 358 (Minn.App.2009). There is no evidence as to the defendant's motives for leaving Minnesota, but his absence certainly appears willful.

c. Good-faith efforts of the surety to apprehend the defendant.

It appears that Howe Bonding made some effort to apprehend the defendant when its agent traveled to Plainview, Texas. However, this effort can hardly be considered "extraordinary" in light of the fact that Howe Bonding was apprised of the defendant's roots in Plainview at the time it executed the bond and assumed the risk that it may have to search for him there. It appears that, after discovering who the "real" Johnny Ray Rodriguez was, Howe's "bounty hunter" made an additional trip to Corpus Christi, Texas, to follow up on the Guadalupe Montalvo alias, and spent "about a hour's worth" of time searching under the Bautista–Castro name. These efforts, although now made in good faith, were only necessary because

Howe Bonding took so few precautions before issuing a $50,000 bond to the defendant and then made so little effort to keep track of him afterwards.

 d. Prejudice to the state.

 "The general rule is that relief from forfeiture will not be granted where the prosecution has been deprived of proof by delay or has otherwise been adversely affected." *Shetsky,* 239 Minn. at 470, 60 N.W.2d at 45. The state does not argue that it was prejudiced, and the district court did not mention any prejudice. However, the defendant in this case is still at large, and the state may not proceed with the prosecution in his absence. "The adverse effect on the prosecution because of the defendant's unexcused absence weigh[s] heavily against the remittance of the forfeited bond." *Vang,* 763 N.W.2d at 359 (quotation omitted).

After considering the *Shetsky* factors, we are persuaded that the district court did not abuse its discretion when it refused to reinstate and discharge the bond.

### DECISION

A bail bond is a contract among the bonding company, the defendant, and the court. The bonding company acts as a surety for the defendant as principal, who is obligated to appear before the court, which acts as creditor. As a legally binding contract, traditional principles of contract law such as the doctrine of mutual mistake may be applied. However, the district court correctly determined that no mutual mistake of fact existed here to avoid the bail contract. We also affirm the district court's refusal to reinstate and discharge the bond in this case.

**Affirmed.**