*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0500**

State of Minnesota,
Respondent,

vs.

Jose C. Garcia Delaharran,
Defendant,

Griffin Bail Bonds, Inc., et al.,
Appellants.

**Filed December 21, 2015
Affirmed
Chutich, Judge**

Dakota County District Court
File No. 19HA-CR-12-485

Lori M. Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Heather D. Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Robert A. Lengeling, Beito & Lengeling, P.A., Minneapolis, Minnesota (for appellants)

Considered and decided by Ross, Presiding Judge; Chutich, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellants Griffin Bail Bonds and Accredited Surety Company seek reversal of the district court's order forfeiting a bail bond in its entirety. They claim that the district court also erred by denying their request to reinstate and to discharge the bond. Because the record shows that the district court did not abuse its broad discretion in forfeiting the bond or in later declining to reinstate and to discharge the forfeited bond, we affirm.

## FACTS

This case involves the disputed forfeiture of a bail bond posted by appellants Griffin Bail Bonds and Accredited Surety Company to secure the appearance of Jose Garcia Delaharran for criminal proceedings in Dakota County.

Appellants posted a bond in the amount of $500,000 in November 2012. Delaharran was released with conditions, including that he wear a GPS tracking device. In January 2013, Delaharran appeared and pleaded not guilty to first-degree sale and second-degree possession of methamphetamine.

On or about July 23, 2013, Delaharran removed his tracking device and could not be located by the state, the district court, or its agents. Two days later, the district court ordered revocation of Delaharran's interim conditions of release and issued a warrant for his arrest. When Delaharran failed to appear for a hearing on August 21, 2013, the district court ordered the bond forfeited, with notice to appellants. Even though a public arrest warrant had issued almost one month earlier, this notice was the first time that appellants learned that Delaharran had fled.

In November 2013, appellants filed a petition to reinstate and to discharge the bond and also petitioned for an enlargement of time to locate Delaharran. The district court granted the enlargement of time and stayed payment of any forfeiture penalty for 90 days. In February 2014, appellants again requested additional time or immediate reinstatement and discharge of the bond. The district court granted 30 additional days and stated that no further additional time would be granted. In March 2014, appellants filed a third petition to reinstate the bond, which the district court denied.

In April 2014, the district court further stayed forfeiture of the bond but ordered appellants to pay $25,000 in court costs related to ongoing efforts to apprehend Delaharran, who had reportedly absconded to Mexico. Appellants paid the $25,000 in court costs as ordered.

In February 2015, at the final bond-review hearing before the district court, the parties agreed that Delaharran had been located at his home in Mexico but that major procedural roadblocks remained before Delaharran could be returned to Dakota County. The Assistant Dakota County Attorney testified on behalf of the state that she had contacted the appropriate federal agency to seek a provisional arrest warrant to allow U.S. agents to apprehend Delaharran in Mexico. She expressed concern that, although Delaharran was involved in possibly "the largest meth case" in the history of Dakota County, "in the scheme of the United States of America and what they're dealing with… I don't think I'm ringing their bell as far as urgency." The state's attorney pointed out that, even if the provisional arrest warrant is issued, ultimate success depends on agreement from the

3

Mexican government. She expressed doubt as to whether Dakota County would ever succeed in apprehending and prosecuting Delaharran.

At that same hearing, appellants offered two witnesses: one former federal agent and current private investigator and one private attorney practicing in Southern California who works "almost exclusively with bail agents and bail forfeiture matters." The private investigator agreed with much of the state attorney's testimony and added that he believed there would be "boots on the ground" quickly once a provisional arrest warrant was procured. He opined that the process of obtaining the warrant would continue to be "very time-consuming," and that "there's nobody that can expedite this matter once it goes to [the federal agency]."

Appellants' other witness agreed with the state's attorney that it was possible that this case could ultimately be rejected by the federal agency as low-priority in comparison to other cases. The attorney-witness opined that ultimate success in arresting Delaharran was more likely "if the incentive of the bond was still in place," insinuating that the physical and logistical support of a bonding company would increase the priority of a case on the desk of a busy Mexican or U.S. federal agent.

Following the final review hearing, the district court ordered forfeiture of the bond in its entirety minus the $25,000 already posted. This appeal followed.

### D E C I S I O N

This court reviews the district court's denial of reinstatement or discharge of a bail bond for abuse of discretion. *State v. Vang*, 763 N.W.2d 354, 357 (Minn. App. 2009). "A

4

district court abuses its discretion when its ruling is based on an erroneous view of the law." *State v. Storkamp*, 656 N.W.2d 539, 541 (Minn. 2003).

## I.    *Shetsky* **Factors**

In an action regarding forfeiture of a bail bond against a surety, a Minnesota statute provides that a court "may forgive or reduce the penalty according to the circumstances of the case and the situation of the party on any terms and conditions it considers just and reasonable." Minn. Stat. § 629.59 (2014); *see also State v. Rodriguez*, 775 N.W.2d 907, 910 (Minn. App. 2009), *review denied* (Minn. Feb 16, 2010). The Minnesota General Rules of Practice provide that a surety may request reinstatement of a bond following its forfeiture by the district court. Minn. R. Gen. Pract. 702(f). "Reinstatement may be ordered on such terms and conditions as the [district] court may require." *Id.* In short, "[t]he district court has broad discretion in deciding whether to reinstate and discharge a forfeited bail bond." *Rodriguez*, 775 N.W.2d at 912.

To determine whether a district court abused its discretion in denying a request to reinstate or discharge a bond, this court considers four factors:

> (1)    [t]he purpose of bail, the civil nature of the proceedings, and the cause, purpose, and length of the defendant's absence; (2) "the good faith of the surety as measured by the fault or willfulness of the defendant"; (3) "the good-faith efforts of the surety—if any—to apprehend and produce the defendant"; and (4) any prejudice to the state in its administration of justice.

*Id.* (quoting *Storkamp*, 656 N.W.2d at 542 (quoting *In re Application of Shetsky*, 239 Minn. 463, 471, 60 N.W.2d 40, 46 (1953))). In addressing these considerations, known as the "*Shetsky* factors," the surety bears the burden of proving that reinstatement and discharge

5

of the bond is justified. *Shetsky,* 239 Minn. at 471-72, 60 N.W.2d at 46. The state bears the burden of proof only under the fourth factor, to prove prejudice in the administration of justice. *State v. Askland*, 784 N.W.2d 60, 62 (Minn. 2010). Our review of the district court's initial decision to forfeit the bond is the same as our review of its decision to deny reinstatement and discharge of a forfeited bond. *See Farsdale v. Martinez*, 586 N.W.2d 423, 425 (Minn. App. 1998) (applying the *Shetsky* factors to determine whether a district court abused its discretion in a bond-forfeiture decision).

Appellants argue that the district court's failure to make thorough findings of fact in its written order or to explicitly analyze the *Shetsky* factors is reversible legal error. Even though the district court did not explain its reasoning in writing, it developed a sufficient record to allow for appellate review of the *Shetsky* factors. *See Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (declining to remand for de minimis technical error). Because all of the *Shetsky* factors weigh in favor of the state, the district court did not abuse its discretion in forfeiting the bond and in declining to reinstate it.

### a. Purpose of Bail

The first *Shetsky* factor considers the purpose of bail, the nature of the proceedings, and the cause, purpose and length of the defendant's absence. As is generally true, the purpose of bail in this case was to ensure that the defendant appeared in court. By agreeing to act as a surety, a bonding company promises to ensure that the defendant will appear to answer to the charges against him. *State v. Williams*, 568 N.W.2d 885, 888 (Minn. App. 1997), *review denied* (Minn. Nov. 18, 1997). Considering the testimony at the final review hearing, we are persuaded that there is little that either party can do to speed the federal

6

and international legal processes required to return Delaharran to Dakota County. Because the defendant has not appeared as ordered and is at this time unavailable for prosecution, this factor weighs in favor of the state.

### b. Surety's Good Faith Measured by Fault or Willfulness of Defendant

The second *Shetsky* factor considers the fault or willfulness of the absent defendant, because "[a] [d]efendant's willfulness or bad faith is attributable to the surety and weighs against forgiveness of a bond penalty." *Rodriguez*, 775 N.W.2d at 913 (quotation omitted). Delaharran's willfulness and bad faith in this case are irrefutable. He removed his tracking device and fled the country, violating the conditions of his release and continuing to evade prosecution. This factor weighs strongly in favor of the state.

### c. Surety's Good-faith Efforts to Apprehend Defendant

The third *Shetsky* factor considers the surety's good-faith efforts to apprehend the defendant. The parties agree that Delaharran's location is known but that legal barriers prevent his arrest and return to the United States. The record is insufficient to particularly determine appellants' contribution to the limited progress toward apprehending Delaharran since he absconded. But considering appellants' failure to adequately monitor Delaharran, evident by their lack of activity for an entire month following removal of his tracking device, this factor also weighs in favor of the state.

### d. Prejudice to State in Administration of Justice

The final *Shetsky* factor considers the prejudice to the state in the administration of justice. This factor is concerned solely with the state's ability to prosecute the case against defendant. *Askland*, 784 N.W.2d at 63. As the record shows that Delaharran has been at

7

large for over two years in a foreign country and will not be apprehended until a complex international extradition process can be completed, this factor weighs strongly in favor of the state.

## II.     Duties Under the Surety Agreement

Appellants contend that the state breached a fiduciary duty to them when it did not promptly notify them that Delaharran removed his tracking device.[1]  The contention that a suretyship gives rise to a fiduciary relationship is meritless.

The Minnesota General Rules of Practice provide that "[w]henever a bail bond is forfeited by a judge, the surety and bondsman shall be notified by the court administrator in writing, and be directed to make payment in accordance with the terms of the bond within ninety (90) days from the date of the order of forfeiture."  Minn. R. Gen. Prac. 702(e).  Appellants do not dispute that they were promptly notified following forfeiture of the bond.  Rather, they argue that fiduciary principles should apply to the surety-creditor relationship in a bail-bond situation, and that therefore the state also had an earlier obligation to notify them that Delaharran had removed his tracking device and that an arrest warrant was issued.  This assertion has no support in Minnesota law.

This court has specifically held that the state's lack of notice to a surety for a defendant's nonappearance at a required hearing had no impact on the surety obligation. *State v. Due*, 427 N.W.2d 276 (Minn. App. 1988), *review denied* (Minn. Sept. 28, 1988).

---

[1]  Appellants also argue that Watchguard, the company contracted by the state to operate and monitor Delaharran's tracking device, had a duty to appellants because of Watchguard's agency relationship with the state.  Watchguard is not a party to this appeal.

8

In *Due* we stated, "[the surety] cannot absolve itself of blame when it did not monitor [the defendant]'s appearances and thus failed to timely learn of his nonappearance," particularly where the fact was a matter of public record. *Id.* at 278.

Likewise in this case, Delaharran's violation of his release conditions and the subsequent arrest warrant were also matters of public record that could have been quickly and easily discovered by appellants if they had been diligently monitoring the case. Minnesota law "grants. . .quasi-police powers" to bond companies to do business, *Rodriguez*, 775 N.W.2d at 910-11, a business which includes risk in choosing to deal with an accused such as Delaharran.

In sum, the district court acted within its broad discretion when it forfeited the bond in its entirety, and when it subsequently denied appellants' request for reinstatement and discharge of the bond.

**Affirmed.**